HAROLD C. BUCKELEW, TRUSTEE, APPELLANT, v. HARRY E. MARTENS AND WILLIAM M. J. BRIGHTLY, TRADING AS KLEAN WAY DAMP LAUNDRY, RESPONDENTS.

Submitted May 29, 1931—Decided October 19, 1931.

For the appellant, *Wolber & Gilhooly* (*John H. Yauch, Jr.*).

For the respondents, *Joseph H. Carr.*

The opinion of the court was delivered by

BODINE, J.   A number of Camden county laundries entered into a price-fixing agreement providing for a minimum price to be charged.  They also agreed that if they accepted washing from persons who solicited the same, they would require those persons to charge their customers the minimum rate.   The agreement contained a covenant that after June 11th, 1928, the signatories would not transact business with solicitors of laundry work unless they had already had business dealings with them.   The solicitors of laundry work are called in the contract by the euphonious term "bob-tails." The contract provided for liquidated damages in the event of breach, and to secure the payment thereof a non-negotiable demand note for $1,000 was given to the plaintiff Buckalew, as trustee, by each of the parties entering into the agreement.

The plaintiff brought suit on such a note and the defendants admitted the making of the same, as well as the price-fixing agreement, and the breach thereof by reason of pro-

hibited transactions with the so-called "bob-tails." The defense was that the contract was illegal as against public policy.

The defendants called a number of witnesses, who gave testimony indicative that the laundry business in Camden and its immediate vicinity had not been profitable and the laundrymen had formed an association in order to maintain prices, and that the contract in suit was the plan devised to remedy their troubles and secure a profit.

Plaintiff's counsel, at the close of defendants' case, moved for a direction of a verdict on the ground that the proofs did not show that the price-fixing contract was unreasonable. The trial court denied this motion, and said that there was a fact question as to whether there was a combination to fix prices and control competition to the detriment of the public. The concluding portion of his charge was as follows: "You will see, therefore, the question is whether this agreement, in its effect, tended to put in the hands of the signatories, the power to practically control prices and the trade, to the detriment of the public. If it did, it is illegal. If it did not, it is legal. If it was illegal, your verdict will be for the defendants. If it is legal, your verdict will be for the plaintiff in the sum of $1,000 dollars." As we view the case, there was no harmful error in this.

In *Wyder* v. *Milhomme*, 96 *N. J. L.* 500, it was held by this court in an opinion by Mr. Justice Parker, that a covenant not to engage in the silk business in the United States for ten years was unenforceable as against public policy, and that the unreasonable character of the covenant was a court question.

The proofs show that the laundries, whose owners were parties to the price-fixing agreement, controlled about eighty-two per cent. of the business in the vicinity of Camden.

The sole ground of appeal is that the trial judge should have directed a verdict in favor of the plaintiff. The ground on which the ruling was requested was that the proofs failed to show that the minimum price fixed was unreasonable.

Appellant argues that although the contract contained a price-fixing provision there was no monopoly, and that the contract was divisible and the breach of the contract occurred by reason of dealings with the so-called "bob-tails" contrary to the provisions of the contract precluding transactions with the "bob-tails" with whom defendants had not previously done business.

Courts have, when possible, regarded contracts in restraint of trade as divisible. *Fishell* v. *Gray,* 60 *N. J. L.* 5; *Williston on Contracts,* §§ 1659, 1779. And such contracts have been construed so as to give them validity, if the construction does no violence to the express language. *Trenton Potteries* v. *Oliphant,* 58 *N. J. Eq.* 507.

The difficulty with the present contract is that it is nothing but an agreement to fix prices. Chapter 13 of the laws of 1913, page 25, made it an indictable offense for firms or persons "to fix at any standard or figure, whereby its price to the public or consumer shall in any manner be controlled, any article or commodity of merchandise, produce or commerce intended for sale, use or consumption in this state or elsewhere." This act was repealed by chapter 143 of *Pamph. L.* 1920, *p.* 285. The act, however, merely made that which was prohibited by the common law an indictable offense and its enactment or its repeal did not change the common law rule applicable to this case.

When the direct, immediate and intended effect of a contract or combination among dealers in a commodity is the enhancement of its price, it amounts to a restraint of trade in the commodity. *Addyston Pipe & Steel Co.* v. *United States,* 175 *U. S.* 211.

Mr. Justice Peckham, in delivering the opinion of the court in that case, said: "We have no doubt that where the direct and immediate effect of a contract or combination among particular dealers in a commodity is to destroy competition between them and others, so that the parties to the contract or combination may obtain increased prices for themselves, such contract or combination amounts to a re-

straint of trade in the commodity, even though contracts to buy such commodity at the enhanced price are continually being made. Total suppression of the trade in the commodity is not necessary in order to render the combination one in restraint of trade. It is the effect of the combination in limiting and restricting the right of each of the members to transact business in the ordinary way, as well as its effect upon the volume or extent of the dealing in the commodity, that is regarded."

He also quoted with approval the following language of Chief Justice Taft, then the Circuit judge who decided the case below, as follows: "Now, the restraint thus imposed on themselves was only partial. It did not cover the United States. There was not a complete monopoly. It was tempered by the fear of competition and it affected only a part of the price. But this certainly does not take the contract of association out of the annuling effect of the rule against monopolies: In *United States* v. *E. C. Knight Co.,* 156 *U. S.* 1, 16, Chief Justice Fuller, in speaking for the court said: 'Again all the authorities agree that in order to vitiate a contract or combination, it is not essential that its result should be a complete monopoly; it is sufficient if it really tends to that end and to deprive the public of the advantages which flow from free competition.' * * * We do not think that at common law there is any question of reasonableness open to the courts with reference to such a contract."

"Numerous agreements have been made * * * by competing firms or corporations having for their object fixing prices * * * for the purpose either of limiting competition for business or of precluding the lowering of prices by means of competition. Such agreements have been almost universally held invalid because of their tendency to injure the public. Under the English law it is not clear that a contract not unreasonable in view of the interests of the parties and intended for their own advantage, not for the injury of others, is ever invalid because in restraint of

trade. Certainly the mere fact that the purpose of an agreement is to maintain prices or to suppress competition does not invalidate it. And agreements for the division of business, or of territory with a view of lessening competition, or for the maintenance of prices, have there been upheld. In the United States, however, such agreements are illegal whether they are proved in fact to be detrimental to the public or not." *Williston on Contracts,* § 1648.

An agreement between certain rolling chair proprietors in Atlantic City, to charge the rates fixed in a city ordinance was upheld by the Supreme Court in *Reed* v. *Saslaff,* 78 *N. J. L.* 158. The court reserved the point as to what the effect would be if the agreement was shown by proofs to have resulted in the control of the rolling chair business in Atlantic City. The proofs did show that but a small number of chair proprietors were parties to the agreement. The decision goes no further than to hold that an agreement to charge a rate fixed by law is not a combination in restraint of trade.

Price-fixing agreements, whether in fact a detriment to the public or not when entered into by competing firms for the purpose of maintaining higher prices, are illegal at common law. The public are entitled to have competition, in order that they may buy at the lowest price, and it makes no difference whether the price-fixing agreements are reasonable or unreasonable or tend to monopoly or not. That which the law prohibited was the making of a price fixing agreement by competitors.

The case of *Taylor Iron and Steel Co.* v. *Nichols,* 73 *N. J. Eq.* 684, dealt with a restrictive covenant in a contract for personal services. Such covenant, whether between employer and employe, or retiring partner, or physician and surgeon, or collector or salesman, or court stenographer, have been upheld as valid if the restraint was within reasonable limits. *A. Fink and Sons* v. *Goldberg,* 101 *Id.* 644. A similar rule has been applied where a restraint within reasonable limits has been exacted upon a sale of a business. *Trenton Potteries* v. *Oliphant, supra.*

These cases, however, rest on a footing quite different from cases where the sole purpose of the agreement between competitors is to fix prices. Such agreements have not been sanctioned by our court.

The provision of the contract before us, excluding business transactions with so-called "bob-tails" with whom one of the contracting parties had not had previous dealings, is not a divisible portion of the contract and cannot, therefore, be enforced. The contract has no other purpose than the fixing of prices and the stifling of competition among the signatories. Business men, of course, can refuse to deal with persons whom they regard as undesirable customers. But the covenant against business transactions with newcomers among the so-called "bob-tails" is but part of the price-fixing plan to stifle competition. It cannot be separated from the rest of the contract, except by making a new contract for the parties. The lack of competition among the signatories is the vice of the price-fixing agreement. The limitations upon business dealings with the "bob-tails" further imposes the price-fixing agreement and places the signatories further away from free competition in their respective businesses. The provision was besides a mere afterthought, not embodied in the original contract, and does not save the situation for the signatories because it limits their power to trade except for the fixed prices.

The judgment below will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.