ABE L. MORRIS, PLAINTIFF-RESPONDENT, v. HANS MULLER, DEFENDANT-APPELLANT.

Submitted February 16, 1934—Decided April 12, 1934.

For the appellant, *Edward Stover*.

For the respondent, *Charles De F. Besore*.

The opinion of the court was delivered by

HEHER, J.  Plaintiff sued, in the Bayonne District Court, to recover damages said to have been sustained by reason of the carelessness and negligence of defendant, a duly licensed real estate broker, in the preparation of a chattel mortgage made by one Levy to plaintiff, covering specified equipment and "stock" contained in the former's drug store, and given to secure a loan, in the sum of $2,000, which plaintiff claims to have made to Levy.  In proceedings instituted in the Court of Chancery by Levy's landlord, who claimed a lien upon the chattels by virtue of a distraint for rent, the Chancellor determined that the statutory requirement of an affidavit stating the true consideration had not been met, and adjudged and decreed the mortgage to be null and void "with respect to the goods and chattels therein described, in so far as the complainant  *  *  *  is concerned  *  *  *."  Levy was adjudicated a bankrupt, and the debt arising from plaintiff's asserted loan to him was discharged.

A jury for the trial of the issue was impaneled.  Each party moved, when the evidence was presented, for a direction

of a verdict in his behalf. The trial judge, misconceiving the effect of these motions, withdrew the case from the jury, and determined the issues himself. He awarded a judgment to plaintiff for $500. Defendant noted an exception to the action thus taken.

In taking the case from the jury the trial judge fell into error. It is not the rule in this state that when cross-motions for a direction of a verdict are made, all questions of fact are to be determined by the court, and not submitted to the jury. The mere making of the cross-motions does not amount to a consent that the case shall be taken from the jury. *Second National Bank of Hoboken* v. *Smith,* 91 *N. J. L.* 531; *Hayes* v. *Kluge,* 86 *Id.* 657, 661. The Supreme Court so held, but concluded that the proofs established that the chattel mortgage was defectively drawn; that defendant was wholly devoid of the qualifications and skill to draw it; that defendant's negligence was established; that "if the judge had submitted the case to the jury he would have been obliged to instruct it to find in his (plaintiff's) favor;" and that defendant, therefore, suffered no legal injury by the action complained of

We are unable to agree with this view of the case. The gravamen of the complaint was negligence in the preparation of the mortgage, predicated upon defendant's alleged representation, express or implied, that he was "authorized and competent to draw chattel mortgages," and possessed "that degree of knowledge and skill necessary for the proper drawing of such instruments." The case which plaintiff sought to establish, by the evidence offered, was that defendant did not have the requisite knowledge and skill, and it was upon the theory that this conclusively appeared, and that a verdict should have been directed for plaintiff, that the Supreme Court affirmed the judgment.

Defendant's duty to plaintiff is measured by his undertaking. A lawyer undertakes. in the practice of his profession of the law, that he is possessed of that reasonable knowledge and skill ordinarily possessed by other members of his profession. He contracts to use the reasonable knowledge

and skill in the transaction of business which lawyers of ordinary ability and skill possess and exercise. On the one hand, he is not to be held accountable for the consequences of every act which may be held to be an error by a court. On the other hand, he is not immune from the responsibility, if he fails to employ in the work he undertakes that reasonable knowledge and skill exercised by lawyers of ordinary ability and skill. *McCullough* v. *Sullivan,* 102 *N. J. L.* 381; 132 *Atl. Rep.* 102. This responsibility of the attorney, although ordinarily enforced by an action on the case for negligence in the discharge of his professional duties, in reality rests upon his employment by the client, and is contractual in its nature. *Fenaille* v. *Coudert,* 44 *Id.* 286; *Robertson* v. *Chapman,* 152 *U. S.* 673; 14 *Sup. Ct.* 741; 38 *L. Ed.* 592; *Watson* v. *Calvert Building, &c., Assn.,* 91 *Md.* 25; 45 *Atl. Rep.* 879. One who falsely represents himself as an attorney is accountable to his client with the same strictness as though he were an attorney. *Miller* v. *Whelan,* 158 *Ill.* 544; 42 *N. E. Rep.* 59; *Foulks* v. *Falls,* 91 *Ind.* 315; 6 *C. J.* 696. But that was not the case here. Plaintiff concededly knew that defendant was not a member of the bar. Moreover, by appropriate office signs, he conveyed the information that he was a real estate broker and notary public. It is evident, therefore, that liability on the part of defendant cannot be predicated upon the false representation that he was a duly licensed attorney-at-law. He did not misstate his authority.

But it is also the rule that when one holds himself out to the public as having professional skill, and offers his services to those who accept them on that supposition, he is responsible for want of the skill he pretends to, even when his services are rendered gratuitously. And it is a corollary of this that where there is no undertaking for skill, the want of it can create no liability. 3 *Cooley on Torts* (*4th ed.*) 474. And it is equally well settled that no man, whether skilled or unskilled, undertakes that the task that he assumes shall be performed successfully, and without fault or error; he undertakes for good faith and integrity, but not for infallibility, and he is liable to his employer for negligence,

bad faith, or dishonesty, but not for losses consequent upon mere errors of judgment. 3 *Cooley on Torts* (*4th ed.*) § 472. A lawyer, without express agreement, is not an insurer. He is not a guarantor that the instruments he will draft will be held valid by the court of last resort. He is not answerable for an error of judgment in the conduct of a case, or for every mistake which may occur in practice. *McCullough* v. *Sullivan, supra.*

Whether there was non-performance of a duty resting upon the defendant is ordinarily a question for the jury. This is so in the case of a lawyer, even though the invalidity of the document appears. In the last cited case, Mr. Justice Katzenbach said: "The trial court was not obliged to pass upon the question of the validity of the chattel mortgage. This question had already been determined by the federal courts. The question presented in the present suit was not the validity *vel non* of the mortgage, but whether or not the defendant had exercised that reasonable knowledge and skill in its preparation which the law exacted from him. The question for determination was one of fact for the jury and not of law for the court as the appellant insists. The validity or invalidity of the mortgage was merely a circumstance to be taken into consideration with other matters in the determination of the question of the defendant's responsibility for the plaintiff's loss."

The proofs were in dispute as to the nature of defendant's undertaking. There was evidence which, if believed, would have justified the jury in rejecting plaintiff's contention that there were representations by defendant, express or implied, that he had special skill and knowledge in the drafting of documents of this character. Defendant testified that plaintiff and his son-in-law, Levy, called at his place of business between five and six P. M., as he was about to depart for home, and that Levy asked, in the presence of plaintiff: "Can you do us a favor quick and make out a chattel mortgage for us?" Defendant replied that his clerk had departed, and he was about to leave for home; that he was "not a lawyer, but would do it the best I could with their help."

He continued: "I told him I wasn't a lawyer and the girl was gone, and I was just going home, and I said 'between us three, I think we can do it;' and we all sat down. I said, 'I will do it to the *best of my ability.'* We sat down, one on each side of me, and they told me what to put in, as I knew nothing about the transaction." Defendant knew that it was necessary to annex an affidavit stating the consideration, and he incorporated in the usual form of affidavit the statement of the consideration given to him by plaintiff and his son-in-law. It was stated to be: "($2,000) two thousand dollars to be paid March 3d, 1934, for which amount I now hold a note." Plaintiff denied that defendant made these statements. Levy was not called as a witness.

It was for the jury to say whether, under the circumstances here presented, there was a representation by defendant that he had the requisite special skill and knowledge for the preparation of the mortgage, and whether or not he had exercised that reasonable knowledge and skill which his undertaking exacted of him. If defendant's own testimony be accepted, there was no such representation. The jury would have been justified in concluding that defendant warned plaintiff that he did not possess the requisite technical skill, but would assist him "to the best of his ability." Whether he fully performed the duty resting upon him under his contract with plaintiff was a question peculiarly within the province of the jury. And in deciding the question whether defendant had exhibited the skill and knowledge which he expressly or impliedly represented he possessed, the jury should consider plaintiff's knowledge of defendant's previous training and experience. Compare *Mathieson Alkali Works* v. *Mathieson,* 150 *Fed. Rep.* 241, 252.

In passing upon motions to nonsuit and for the direction of a verdict, the evidence will not be weighed. All the evidence which supports the claim of the party against whom the motion is made must be accepted as true, and he is entitled to the benefit of all legitimate inferences which may be drawn therefrom. Where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether

controverted or uncontroverted, the questions at issue should be submitted to the jury. *Lipschitz* v. *New York and New Jersey Produce Corp.*, 111 *N. J. L.* 392.

Respondent insists that defendant, in the preparation of this document, was unlawfully engaged in the practice of law. But we do not think so. Chapter 138 of the laws of 1924 (*Pamph. L., p.* 308), as amended by chapter 268 of the laws of 1928 (*Pamph. L.* 1928, *p.* 676), making it a misdemeanor for a person not duly licensed as an attorney or counselor-at-law to "engage in the practice of the law," expressly provides that the act shall not apply to the "drawing of deeds, bonds, mortgages, leases, releases, agreements or assignments by a master in chancery or a licensed real estate broker." This clearly evinces a legislative purpose to vest in real estate brokers, who must, as a prerequisite to the right to a license, submit to examination as to their qualifications, the authority to draft the enumerated documents, and the legislature's power to do so cannot be doubted. But, assuming that he was illegally engaged in the practice of law, the pleaded cause of action is not maintainable. In that situation, defendant could not recover compensation for the service rendered, and, by the same token, plaintiff would not have a right of action under the contract, for he knew that defendant was not licensed to practice law. Such a contract is illegal and void. It directly requires an unlawful act for its performance, and is contrary to public policy. The court will not lend its aid to one who founds his cause of action upon an illegal act. 3 *Williston Cont.*, §§ 1630, 1750; 13 *C. J.* 423.

There is another reason why the judgment cannot stand. There was no basis in the proofs for the assessment of damages made by the trial judge. In respect of this issue, plaintiff proved only that Levy's receiver in bankruptcy sold all his "assets" for $725. The order for sale in the bankruptcy proceeding directed the receiver to offer the "assets" of the bankrupt at public auction, and "to offer the assets claimed by Abe L. Morris (plaintiff) and Simon Beer free and clear of the liens of the said Abe L. Morris and Simon Beer, the liens, if any, to attach to the proceeds of sale." The receiv-

er's report of sale certified that he sold the "assets" of the bankrupt in bulk for the above-mentioned sum. Manifestly, this proof of the bulk sale price of the bankrupt's "assets," which may have included, and undoubtedly did, items of property not covered by the chattel mortgage, furnished no basis for a determination of plaintiff's alleged loss. And there was no other evidence to support the assessment of damages made.

In this connection it should be observed that the trial judge erroneously barred inquiry into the consideration for the mortgage. If there was no consideration, in fact, for the making of the mortgage, or the consideration was not truly stated to defendant, or the mortgage, even though prepared with technical skill, would have been by reason of fraud or otherwise, void as to creditors, plaintiff could not have suffered the damage alleged in the complaint.

Judgment reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 13.