22 N.J. Super. 91 (1952)
91 A.2d 660
GEORGE H. WEINROTT & COMPANY, A PENNSYLVANIA CORPORATION, PLAINTIFF,
v.
BURLINGTON HOUSING CORPORATION, A NEW JERSEY CORPORATION, EDMOND E. ROBINS, AND MARKHEIM-CHALMERS-LUDINGTON, INC., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 20, 1952.
*93 Mr. Sidney W. Bookbinder, attorney for plaintiff.
Mr. Louis B. LeDuc, attorney for defendants Burlington Housing Corporation and Edmond E. Robins.
Messrs. Starr, Summerill & Davis (Mr. S. Lewis Davis appearing), attorneys for defendant Markheim-Chalmers-Ludington, Inc.
EWART, J.S.C.
The complaint in this action is divided into four counts.
In the first count plaintiff sues defendant Burlington Housing Corporation to recover the sum of $47,952 representing a 2% commission for placing for the said defendant 296 first mortgages of $8100 each. The basis of plaintiff's claim is set forth in paragraphs 2, 3 and 4 of the first count which read as follows:
"2. On or about the aforesaid date the defendant, Burlington Housing Corporation retained the services of plaintiff for the purpose of placing 296 first mortgages of $8100.00 each at 4% for 25 years, for which service the said defendant agreed to pay to the plaintiff the sum of 2% for each mortgage.
3. Plaintiff was successful in this venture and on February 2, 1948, 296 firm committments were obtained from the Federal Housing Administration.
4. Thereupon, there became due and owing to the plaintiff, the sum of $47,952.00."
In the second count plaintiff sues to recover from defendant Burlington Housing Corporation the sum of $36,841 for engineering services rendered by plaintiff to said defendant between December 15, 1947 and August 16, 1948. The gist *94 of the complaint in this count is set forth in paragraphs 2, 3 and 4 of the second count which read as follows:
"2. On or about the 15th day of December, 1947, the Burlington Housing Corporation retained the services of plaintiff for the purpose of obtaining certain engineering service for which the said defendant agreed to reimburse the plaintiff.
3. Between December 15th, 1947, and August 16th, 1948 plaintiff had the said engineering services performed.
4. Plaintiff expended $36,841.00 in this manner on behalf of the said defendant between the aforesaid dates."
In the third count plaintiff charges that in the month of March 1950 defendant Burlington Housing Corporation conveyed to its president, Edmond E. Robins, individually, the real estate comprising substantially all of its assets for a consideration substantially below the true value of the assets; that the defendant Robins had knowledge of the unpaid claims of the plaintiff against Burlington Housing Corporation; and that the transfer of assets to the defendant Robins was made for the purpose of defrauding the creditors of Burlington Housing Corporation, including the plaintiff.
In the fourth count it is charged that defendant Robins, on or about June 13, 1951, conveyed the real estate formerly belonging to defendant Burlington Housing Corporation to defendant Markheim-Chalmers-Ludington, Inc., for a consideration of $75,000 and that at the time of said conveyance defendant Markheim-Chalmers-Ludington, Inc. had prior knowledge of the fact that the assets of Burlington Housing Corporation had been conveyed by it to the defendant Robins in order to defraud creditors of Burlington Housing Corporation.
Plaintiff demands judgment for $84,793 (the sum of the demands in the first and second counts), together with interest and costs, against all the defendants, or either of them; that the defendant Robins be adjudged to hold in trust for the plaintiff the proceeds received by him on the transfer of said real estate to the defendant Markheim-Chalmers-Ludington, Inc.; and that an equitable lien be impressed upon the *95 said real estate, formerly constituting practically all of the assets of Burlington Housing Corporation and now held by defendant Markheim-Chalmers-Ludington, Inc., for the said sum of $84,793 together with interest and costs.
Interrogatories were served upon plaintiff on behalf of defendant Markheim-Chalmers-Ludington, Inc., and another set of interrogatories were served upon the plaintiff by the defendants Burlington Housing Corporation and Robins. Plaintiff has answered both sets of interrogatories.
All of the defendants served upon the plaintiff on June 4, 1952 demand for admissions, none of which have been answered by the plaintiff. Under the provisions of Rule 3:36-1, the failure of the plaintiff to answer said demands is deemed an admission of the correctness of the matters set forth in the demand which the plaintiff was requested to admit.
And the deposition of George H. Weinrott, president of the plaintiff corporation, was taken on May 8, 1952.
The pleadings in this cause, together with the answers to interrogatories, demand for admissions, and deposition of George H. Weinrott, reveal the following factual situation, about which there appears to be no dispute:
1. Plaintiff George H. Weinrott & Company is a Pennsylvania corporation incorporated in or about the year 1931. George H. Weinrott, individually, has been president of the corporation ever since its organization. He and his wife are presently the sole stockholders of the corporation and he individually operates the business of the corporation.
2. Plaintiff corporation was never licensed as a real estate broker or salesman in the State of New Jersey nor in any state outside of the State of New Jersey.
3. Neither the plaintiff corporation nor George H. Weinrott individually is licensed as a professional engineer in the State of New Jersey or in any state other than the State of New Jersey.
4. The engineering services rendered as mentioned in the second count of the complaint are described by the plaintiff *96 in its answer to the sixth interrogatory under the second count submitted by the defendant Burlington Housing Corporation as follows:
"6. Boundry survey, detail plot plan of 296 lots, street plan profiles, sewer mains and collection system, sewerage treatment plant layout including State approval, sewage treatment plant layout and design, water pumping station complete including State approval and distribution lines, house stakes, storm sewer plans, representation before Public Authorities and Utility companies on permits, zoning, etc. representation of sub-division analysis and land planning and approval of same by FHA."
And the plaintiff's answers to interrogatory No. 5 under the second count submitted by defendant Markheim-Chalmers-Ludington, Inc., discloses that Damon & Foster of Sharon Hill, Pennsylvania, were employed by plaintiff as consulting engineers; that most of the charges for engineering services contained in the second count of the complaint were for services rendered by Damon & Foster; and that the plaintiff, George H. Weinrott & Company, acted as chief engineer of the housing project.
The deposition of George H. Weinrott, individually, president of the plaintiff corporation, taken May 8, 1952, discloses that the plaintiff corporation acted as project engineer; that the plaintiff corporation subcontracted to Damon & Foster of Sharon Hill, Pennsylvania, that portion of the engineering work which the plaintiff considered Damon & Foster were qualified to perform; that the engineering services rendered by the plaintiff corporation were actually rendered by the witness George H. Weinrott, the president of the plaintiff corporation; that plaintiff corporation procured the services of Damon & Foster; participated in the studies, analyses and other matters relevant to the development of the housing program, and participated in the hearings for obtaining authority for the installation of the sewage treatment plant and of the water plant. It further appears in the deposition of George H. Weinrott that the plaintiff has paid to Damon & Foster on account the sum of $1,952; that the total *97 charges of Damon & Foster for services rendered amounted to the sum of $28,887; and that the balance of $7,954 is the difference between the total contract price for engineering services and the amount ($28,887) which the plaintiff corporation subcontracted to Damon & Foster. However, George H. Weinrott, president of the plaintiff corporation, insisted that the total charge for engineering services was made by the plaintiff corporation. After having testified that the bill of Damon & Foster was $28,887, he was asked whether the balance of $7,954 represented the engineering services rendered by the plaintiff corporation. The following questions to, and answers by, Mr. Weinrott, illustrate the point, as follows:
"Q. Does that difference measure the engineering services that were rendered by the plaintiff corporation?
A. The plaintiff corporation's services are represented by the sum of $36,841.00, it is not represented by the difference."
In the examination, plaintiff's president was further queried about the engineering services and by whom rendered, etc. The position of the plaintiff with respect to the charge for engineering services is set forth by the plaintiff's counsel in an objection to further questioning along that line, as follows:
"Mr. Bookbinder: I would like to place this objection on the record. The witness has already answered that question by stating the full contract price for those engineering services was a total of $36,841.00, and of that $36,841.00 he subcontracted a total to Damon & Foster which amounted to dollars and cents $28,887.00. Insofar as accounting for specifically the balance, I think that is immaterial."
Defendants now join in a motion for summary judgment on the grounds: (1) that the complaint fails to state a cause of action because the agreements alleged in the first and second counts of the complaint are illegal and void, and (2) because the plaintiff is neither a creditor of any or all of the defendants, nor the holder of a judgment lien against *98 any or all of the defendants or of the real estate now or formerly owned by any or all of them, and therefore has no standing to attack the conveyances made by defendant Burlington Housing Corporation to defendant Robins and by defendant Robins to defendant Markheim-Chalmers-Ludington, Inc.

CONCLUSIONS
The motion for summary judgment in favor of defendants is dealt with in the light of the foregoing state of facts.
As to the first count: In the first count plaintiff corporation seeks to recover a commission of $47,952 for having represented the defendant Burlington Housing Corporation in placing for the latter corporation 296 first mortgages of $8100 each upon an alleged agreement that plaintiff was to be paid a commission of 2%.
L. 1921, c. 141, as amended, L. 1931, c. 286, (R.S. 45:15-1 et seq.) regulates the business of a real estate broker or salesman. Section 1 of the act prohibits any person from engaging in the business of a real estate broker or salesman, directly or indirectly, temporarily or otherwise, without being licensed so to do as in the statute provided. Section 2 of the act defines any single act, transaction or sale as engaging in business within the meaning of the statute. The pertinent portions of Section 3 of the act define a real estate broker and real estate salesman as follows:
"A real estate broker, for the purposes of this article, is defined to be a person, firm or corporation who, for a fee, commission or other valuable consideration, * * * offers or attempts to negotiate a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of real estate for others."
When plaintiff corporation contracted to secure or place mortgages upon lands of the defendant Burlington Housing Corporation for a commission of 2%, as alleged in the first count of the complaint, it was engaging in the business of a real estate broker as defined in the statute cited.
*99 It affirmatively appears that the plaintiff corporation was never licensed as a real estate broker or salesman in the State of New Jersey, nor elsewhere outside of this State. Hence it follows that the services rendered by the plaintiff corporation as described in the first count of the complaint and for which it seeks to recover a judgment in this suit were unlawful because prohibited by the statute. Public policy, as evidenced by the statute, forbids that this court should lend its aid to the enforcement of an illegal bargain. Kenney v. Paterson Milk & Cream Co., 110 N.J.L. 141 (E. & A. 1932); Donadt v. Eberle, 20 N.J. Misc. 349 (Dist. Ct. 1942); Saks Theatrical Agency v. Mentine, 24 N.J. Misc. 332 (Dist. Ct. 1946); Solomon v. Goldberg, 11 N.J. Super. 69 (App. Div. 1950); Corson v. Keane, 4 N.J. 221 (1950).
As to the second count: In the second count plaintiff corporation seeks to recover the sum of $36,841 for engineering services rendered to defendant Burlington Housing Corporation. The nature of the engineering services so rendered is set forth above. It affirmatively appears in the admissions referred to above, and also in the deposition of George H. Weinrott, that neither the plaintiff corporation nor George H. Weinrott, individually, is licensed as a professional engineer in the State of New Jersey or in any other state outside of New Jersey. It likewise appears that the plaintiff corporation contracted to render the engineering services in question; that it subcontracted the major portion of the engineering work to Damon & Foster of Sharon Hill, Pennsylvania; that the plaintiff corporation acted as chief engineer of the project; that there was no privity of contract between Damon & Foster and the defendant Burlington Housing Corporation (and Damon & Foster are not parties to this suit); and George H. Weinrott, president of the plaintiff corporation, in his deposition insisted that the total charge of $36,841 for engineering services claimed in the second count of the complaint represents the bill of the plaintiff corporation.
*100 L. 1938, c. 342 (R.S. 45:8-27 et seq.) regulates in this State the profession of engineering and land surveying. Section 27 makes it unlawful for any person to practice or offer to practice professional engineering or land surveying unless duly licensed under the provisions of the statute. Section 28 (b) defines professional engineering to include any professional services such as consultation, investigation, evaluation, planning, design, or responsible supervision of construction or operation in connection with any public or private engineering or industrial project. The statute was extensively amended by L. 1950, c. 149, but that amendment is not deemed to apply to the present suit because the claim sued upon in the second count is for services rendered between December 15, 1947 and August 16, 1948, prior to the enactment of the 1950 amendments.
This statute is regulatory and is not intended merely to raise revenue. The rendition of engineering services by one not duly licensed is illegal and cannot support a suit to recover judgment for such services. The cases above cited, while dealing with the subject of real estate brokers, are applicable in principle to the subject of professional engineering. I am of the opinion under the facts above recited that plaintiff corporation seeks in the second count of the complaint to recover for engineering services rendered by it when it was not licensed to render such services; that the agreement for said services by one not licensed as an engineer is contrary to the statute and is illegal; and that public policy forbids that this court should lend its aid to the enforcement of an illegal bargain.
On this motion plaintiff contends that the services rendered by it to the defendant Burlington Housing Corporation, as set forth in the first two counts of the complaint, were not those of a mere broker or engineer, but that plaintiff was rendering services as a promoter of a large housing development; that the statutes cited above were not intended to regulate the services of a promoter, but merely services of a real estate broker or of an engineer, respectively; and *101 that there is nothing in the statutes that would prohibit a promoter from recovering for the services described in the complaint. In support of its argument, plaintiff cites the following cases: Montgomery v. East Ridgelawn Cemetery, 189 Misc. 99, 68 N.Y.S.2d 836 (Sup. Ct. 1945), affirmed 272 App. Div. 1048, 75 N.Y.S.2d 287 (App. Div. 1946); Solomon v. Goldberg, 11 N.J. Super. 69, at 73 (App. Div. 1950). I have examined both of these cases. The New York case is distinguishable on the facts from the case at bar. In that case plaintiff was promoting a cemetery; selling rights to burial in the cemetery; expended monies for advertising the cemetery; erected at his own expense a chapel for the use of certain church denominations for their members; and conducted himself as a representative of the defendant rather than as a mere real estate broker. In that case, on defendant's motion for an order dismissing the complaint on the merits and for summary judgment, the court denied the motion and indicated that under a line of New York authorities, plaintiff might be entitled to recover for services as a promoter or representative and that under certain conditions real estate licenses are not necessary.
In Solomon v. Goldberg, supra, the court did not decide that a promoter may recover for services ordinarily rendered by a real estate broker without being licensed as a broker. The opinion in that case does contain the observation, by way of dictum, that agreements for services of a promoter may be actionable.
The complaint in the case at bar contains no allegations to support the plaintiff's theory that it was acting as a promoter rather than as a real estate broker and an engineer.
Notwithstanding the foregoing discussion concerning the question of whether a promoter needs to be licensed as a broker in order to collect commissions in real estate transactions, I think it clearly appears in this case that the services rendered under the first count of the complaint were clearly those of a real estate broker; that the services rendered under the second count were clearly those of an engineer; *102 that admittedly plaintiff was not licensed either as a real estate broker or as an engineer; and that the public policy of this State, as evidenced by the statutes cited, will not permit a recovery by the plaintiff on either the first or second counts of the complaint.
As to the third and fourth counts: Plaintiff's right to attack the conveyances described in the third and fourth counts of the complaint is predicated upon its being a creditor of the defendant Burlington Housing Corporation. It alleges no claims against the Burlington Housing Corporation excepting those set forth in the first and second counts. In view of the holding that plaintiff has no valid or legal claims under the first and second counts, plaintiff corporation has no standing to attack the conveyances mentioned in the third and fourth counts.
I conclude that the pleadings, depositions and admissions contained in the file of this cause show palpably that there is no genuine issue as to any material fact challenged and that the defendants, on their joint motion, are entitled to a judgment as a matter of law. Form of judgment may be presented accordingly.