IN THE MATTER OF "X" AN ATTORNEY-AT-LAW.

Argued February 20, 1956—Decided March 26, 1956.

PER CURIAM. This matter is before us as the result of a presentment by an Ethics and Grievance Committee charging "X," a member of the New Jersey Bar, with a violation of *R. R.* 1:12–4(*b*) in permitting an attorney not admitted to the bar of this State to practice here in the respondent's name. The briefs and record submitted pursuant to an order to show cause reveal a factual situation which is not in dispute.

"Y," an out-of-state law firm, none of the members of which are admitted to practice in New Jersey, are attorneys for "Z," developers engaged in major residential real estate projects in various states. "Z" decided to develop several tracts in this State which had been acquired by them for that purpose and engaged the "Y" firm to handle the legal aspects of the operation.

The out-of-state law firm established an office in New Jersey, in one of the new homes constructed by "Z." It engaged "X," the respondent, at a weekly salary to supervise the office and to undertake all the legal work necessary in passing and certifying titles, preparation and execution of

papers involved with sales and mortgages, and attendance at title closings. There is no allegation that any member of the "Y" firm performed any of these functions and from all that appears the office was staffed and equipped by it to serve "X" in the clerical burden necessarily incident to the legal services.

Questions of professional propriety arose from the initial functioning of the office. A sign was placed upon the outside of the office bearing the legend "Law Offices, 'Y' "; accounts were opened in the firm name in a New Jersey bank; the local telephone directory listed "Y" as attorneys in the general and classified sections; the firm name was further communicated upon stationery used in the office, in closing statements and in papers filed with the county clerk.

Approximately 1,200 closings were consummated. Closing fees were initially $300 and later increased to $350. These sums were deposited in the bank account or accounts from which either a member of the out-of-state firm, or the respondent, had a right of withdrawal. Disbursements from this fund were made to cover the expenses of the operation, including the respondent's weekly salary. The respondent recognizes that the fund belongs to the "Y" firm, but it is impossible to ascertain from the record before us the precise amount realized by the out of state firm upon each closing.

Following the first month and a half of operations the respondent sawed off the words "Law Offices" from the sign attached to the building leaving the rest of the sign bearing the name of the "Y" firm on display. Below this sign he placed another sign bearing his name as "Attorney-at-Law." Coincident with the removal of the "Law Offices" designation from the sign, the respondent ceased to use stationery of the "Y" firm and began using stationery printed with his own name as attorney-at-law. The "Y" firm designation was also eliminated from the deed, mortgage and other forms used in the transactions and the respondent's substituted in place thereof. However, the basic arrangement between "X" and "Y" continued and for all that appears still remains the same; the office personnel are considered

employees of the "Y" firm and the respondent receives a weekly salary.

We cannot approve of any arrangement whereby a member of the bar of this State works on a salary basis for an out-of-state lawyer, *R. R.* 1:12–4. The objectives here sought of giving the client "Z" the benefit of the experience and services of "X" can readily be obtained within the ethical confines of our rules by "Z" retaining or employing "X" to do their title work in this State.

The problem presented was a novel one and we are convinced of the complete absence of any wrongful intent or of any willful attempt at violation of the rules and canons on the part of the respondent. Therefore, upon due proof that the respondent has disassociated himself from his present arrangement the order to show cause will be discharged.

*For discharge subject to compliance with the conditions mentioned in the opinion*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.