91 N.J. Super. 546 (1966)
221 A.2d 755
IRVING P. MAGASINY AND ONIC DEVICES, INC., PLAINTIFFS-APPELLANTS,
v.
PRECISION SPECIALTIES, INC., JOHN S. BAER AND RAYMOND F. KOEHLER, JOINTLY, SEVERALLY, AND/OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1965.
Decided July 1, 1966.
*547 Before Judges GAULKIN, LABRECQUE and BROWN.
Mr. Arthur E. Ballen argued the cause for the appellants.
Mr. James Hunter, III, argued the cause for the respondents (Messrs. Archer, Greiner, Hunter & Read, attorneys).
PER CURIAM.
Summary judgment was granted in favor of defendants on the ground that the contract sued upon was unenforcible because plaintiffs had not procured a professional engineering license pursuant to N.J.S.A. 45:8-27. We reverse because the record does not "show palpably that there is no issue as to any material fact challenged and that the moving party is entitled to a judgment * * * as a matter of law." Therefore summary judgment should not have been granted. R.R. 4:58-3.
Our examination of the abbreviated record submitted to us leaves us in serious doubt whether plaintiffs were obliged to obtain such a license to carry on their activities. We are reluctant to pass upon the question without giving the State Board of Professional Engineers and Land Surveyors an opportunity to be heard, for we might come to conclusions contrary to its position and which might unduly curtail its jurisdiction. Consequently, we inquired informally of the Attorney General's office whether (a) said Board did require a license for activities such as plaintiffs', and (b) whether the Board wished to be heard. We were advised, again informally, that it was not at all clear to the Board that plaintiffs had to have a license for what the Attorney General understood the record before us discloses, and that in the absence of full *548 knowledge about plaintiffs' activities  including activities beyond those which entered into the specific contract sued upon  the Board could not answer either question.
Our doubts about the applicability of the statute arise from two related sources: the ambiguity of the statute, and the insufficiency of the record before us as to the plaintiffs' occupation or business and their activities generally, and the nature and details of the particular contract sued upon and what plaintiffs did or were required to do to perform it.
"Engineering" today includes a vast number of subdivisions and specialties which have nothing to do with the design and structure of buildings. Examples which immediately come to mind are marine, aeronautical, electronic, computer, space, rocket, mining, radar, telephonic, television, acoustical, traffic, sound, radio, weather, missile, soil, sanitary, hydraulic, chemical, automotive, illuminating, heating, air-conditioning, packaging and refrigeration. In addition, we have those who call themselves industrial, sales, efficiency, time-study, management and similar "engineers." On the other hand, does one require a license if he does not hold himself out as a "professional engineer," but merely as an expert? Compare what H.L. Mencken said in The American Language, p. 291: "Next to engineer, expert seems to be the favorite talisman of Americans eager to augment their estate and dignity in this world. Very often it is hitched to an explanatory prefix, e.g., housing , planning , hog , erosion , marketing , bollwevil , or sheep-dip , * * *." And what about inventors, developers of items for sale, etc.? Must all such people obtain licenses under N.J.S.A. 45:8-27? What is meant by "professional engineering," the only occupation licensed by the Board? The statute lumps engineers with surveyors. Is it pointed only to those who deal principally with buildings, structures, and machinery and equipment and fixtures? Without hearing from the Board we should not attempt to define the limits of the statute. Cf. R.R. 4:37-2; 4:88-10.
It may be that the transaction between the parties did not require plaintiffs to be licensed, even though their other activities *549 did. In that case, should not the defense fail? There are numerous exceptions to such statutes. See Annotation, 82 A.L.R.2d 1014 (1962); 6A Corbin, Contracts § 1512, pp. 713-716 (1962); Dick Weatherston's Assoc. Mech. Servs., Inc. v. Minnesota Mutual Life Ins. Co., 257 Minn. 184, 100 N.W.2d 819, 82 A.L.R.2d 1004 (Sup. Ct. 1960); Kennoy v. Graves, 300 S.W.2d 568 (Ky. Ct. App. 1957); Loewy v. A. Rosenthal, Inc., 104 F. Supp. 496 (E.D. Mich. 1952); Montgomery v. East Ridgelawn Cemetery, 189 Misc. 99, 68 N.Y.S.2d 836 (Sup. Ct.), affirmed, 272 App. Div. 1048, 75 N.Y.S.2d 287 (App. Div. 1947); Keller v. Baumgartner, 153 F.2d 474 (7 Cir. 1946); Engel v. Ansco Photoproducts, Inc., 229 App. Div. 241, 240 N.Y.S. 737 (App. Div. 1930), affirmed 256 N.Y. 615, 177 N.E. 163 (Ct. App. 1931).
6A Corbin, supra, says:
"* * * The statute may be clearly for protection against fraud and incompetence; but in very many cases the statute breaker is neither fraudulent nor incompetent. He may have rendered excellent service or delivered goods of the highest quality, his non-compliance with the statute seems nearly harmless, and the real defrauder seems to be the defendant who is enriching himself at the plaintiff's expense. Although many courts yearn for a mechanically applicable rule, they have not made one in the present instance. Justice requires that the penalty should fit the crime; and justice and sound policy do not always require the enforcement of licensing statutes by large forfeitures going not to the state but to repudiating defendants.
It must be remembered that in most cases the statute itself does not require these forfeitures. It fixes its own penalties, usually fine or imprisonment of minor character with a degree of discretion in the court. The added penalty of non-enforceability of bargains is a judicial creation. In most cases, it is wise to apply it; but when it causes great and disproportionate hardship its application may be avoided. It is true that the method of avoidance may be by specious distinctions. It may be denied that the statute in the case is for protection of public health and morality; or the court may find that the specific transaction was only sporadic and exceptional and that the unlicensed plaintiff was not really carrying on the business or profession.
Where it is clear that the statute requires the license or registration for protection of the public against fraud and incompetence, the courts usually say and actually hold that bargains made in breach of the law are not enforceable by the wrongdoer. This accords with sound policy except when it operates with disproportionate severity. The statutory requirements are far from uniform; and the just deserts of the statute *550 breaker are also not uniform. In general, the non-enforceability of his bargains will have a salutary effect in causing obedience to the licensing statute. Therefore, the general rule will no doubt continue to be maintained as a `general' rule, while still permitting the court to consider the merits of the particular case and to avoid unreasonable penalties and forfeitures."
In Dick Weatherston's Assoc. Mech. Servs., Inc. v. Minnesota Mutual Life Ins. Co., supra, plaintiff was in the air-conditioning business and designed an air-conditioning installation for defendant. Plaintiff offered to supply the material and equipment for a stated figure, which offer defendant allegedly accepted. When defendant repudiated the contract and plaintiff sued, defendant raised the defense of the lack of a license. The court pointed out that "no charge for design or plan was made. Weatherston considered the contract as one for the sale of an entire system and none of his actions in submitting the proposal are inconsistent with that conclusion," and (citing Corbin) said for this no license was necessary.
Furthermore, as Corbin points out, supra, even when the activity is literally within the statute, the facts may present a situation so borderline or unfair that the defense of illegality will not be permitted, or, at least, the defendant will not be allowed to keep what he received without making fair compensation. See, for example, John E. Rosasco Creameries, Inc. v. Cohen, 276 N.Y. 274, 11 N.E.2d 908, 118 A.L.R. 641 (Ct. App. 1937), and the annotation thereto appended. Cf. Restatement, Contracts, § 600.
For the foregoing reasons, the judgment is reversed and the case is remanded for a plenary trial. The parties may wish or need to call representatives of the Board as witnesses. In any event, the Board should be advised of the litigation and permitted to intervene if it so desires. We suggest that the case be tried fully upon all of its issues, including those which go to the merits, so that in the event of a further appeal we will be able to dispose of the case once and for all. We do not retain jurisdiction.