DALTON, DALTON, LITTLE,
INC., Plaintiff,

v.

Anthony MIRANDI, Individually and t/a
Mirandi Construction Co., et al.,
Defendants.

Civil No. 1556–73.

United States District Court,
D. New Jersey.

May 19, 1976.

**1002**

Carchman, Sochor & Carchman, P. A., Princeton, N. J., and Ryan, Saros, Davis & Stone, Elizabeth, N. J., for plaintiff.

Gulkin & Marino, Newark, N. J., for defendants Mirandi and Lancet.

Rosenberg & Waldman, P. A., Glen Rock, N. J., for defendants Lafayette, Beranto, N. J. Realty Mortgage and Peck.

Elmer O. Goodwin, Newark, N. J., for defendant Sun Life.

## OPINION

BIUNNO, District Judge.

Plaintiff (hereafter, "Architect") is a Maryland corporation. It sues (on diversity grounds) in the District of New Jersey to recover fees for architect's services in preparing and certifying plans and specifications for a building to be constructed in New Jersey.

The defendant owner (with whom the contract was made), as well as collateral defendants, say that the fees claimed are not payable because the professional work was not properly performed. This is raised by way of defense, and also by counterclaim for additional expenses incurred to correct defects, and the like.

Another issue, a fundamental one, has been raised: may the Maryland corporate entity which made the contract with the owner, sue for professional fees in this court under diversity jurisdiction when it had no authority to render professional services in New Jersey for construction of a building in this State, i. e., is the contract illegal?

If the contract is illegal, it is the policy of the law to leave the parties where it finds them, and to deny relief to both sides. The rule is long established. See *Morris v. Muller,* 113 N.J.L. 46, 172 A. 63 (E&A, 1934); *Cameron v. Int'l, etc.,* 119 N.J.Eq. 577, 183 A. 157 (E&A, 1935), *cert. den.,* 298 U.S. 659, 56 S.Ct. 681, 80 L.Ed. 1385 (1936); *Gionti v. Crown, etc., Co.,* 128 N.J.L. 407, 26 A.2d 282 (E&A, 1942); *Ryan v. Motor Credit Co.,* 130 N.J.Eq. 531, 23 A.2d 607 (Ch.1941), *aff'd.,* 132 N.J.Eq. 398, 28 A.2d 181 (E&A, 1942).

To the same effect, see *Williston on Contracts, Rev.Ed.,* §§ 1780, 1782. In some respects, the question has sometimes turned on whether the illegal provision, *by the terms of the bargain,* has a specific consideration apportioned to it; but even in such cases the contractual apportionment will not save the agreement if the illegal portion is an essential part of the contract as a whole. See, in this respect, Restatement of Contracts, § 607 and, especially Comment (a); the rule is well stated in *Lehigh Valley R. Co. v. United Lead Co.,* 102 N.J.L. 545, 133 A. 290 (S.Ct., 1926). See, also, *Stack v. P&G Garage, Inc.,* 7 N.J. 118, 80 A.2d 545 (1951, from bottom of p. 121 to top of p. 122); *Wilentz v. Hendrickson,* 133 N.J.Eq. 447, 33 A.2d 366 (Ch.1943), *aff'd.,* 135 N.J.Eq. 244, 38 A.2d 199 (E&A, 1944); *Buckelew v. Martens,* 108 N.J.L. 339, 156 A. 436 (E&A, 1931).

The test of the rule is that if it appears that there would have been no contract made without the illegal portion, then the striking of it strikes out the entire contract. The test is not merely one of "divisibility" of consideration for specific promises, but is one of "severability" in its correct sense. See, *Dixon v. Smyth Sales Co.,* 110 N.J.L. 459, 166 A. 103 (E&A, 1933).

Here, of course, such issues are not reached because the contract itself, as a whole, was for the rendering of architectural services for a New Jersey building. If Architect, as a Maryland corporation, could not lawfully render those services under the contract as drawn and executed, then there are no subordinate questions about "divisibility" or "severability". This is the question raised on the motion papers submitted, and here to be resolved.

With very few exceptions, statutory regulation of the practice of professions, until recent times, did not allow them to be practiced in the corporate form in most jurisdictions. The New Jersey pattern, mostly found in Title 45 of the Revised Statutes of 1937 fully reflects this policy, no doubt common among the other jurisdictions. Traditionally, professional practice in groups of licensees, has taken the form of a partnership or firm, with all of the members of the contracting group and their professional employees being licensed to practice the profession in the pertinent jurisdiction. See, for example, Canon 33, *A.B.A. Canons of Professional Ethics,* and the corresponding provisions in the new *A.B.A. Code of Professional Responsibility,* Canon 2, and EC 2–11, 2–12, 2–13, DR–2–102(B), (C) and (D); Canon 3, with EC 3–8 and DR 3–103; and Canon 5, with DR 5–107(C).

In recent years, due to clear inequities in the federal income tax treatment of professional partnerships and firms vis-a-vis business corporations, and the initial posture of the Internal Revenue Service through the "Kintner Regulations" (designed to block efforts to achieve essential equality of tax treatment), many States enacted statutes authorizing the formation of professional corporations or associations. See, e. g., 87 N.J.L.J. 193 (1964).

The history of these efforts is well known. After a series of unbroken failures in a significant number of the federal circuits, Solicitor-General Griswold announced the capitulation of IRS on the question, 92 N.J.L.J. 533 (1969). The professional corporation or association is now recognized for federal tax purposes on the same basis as the corner butcher, baker or candlestick maker.

New Jersey is one of the States that enacted such a law, the Professional Service Corporation Act, P.L.1962, c. 233, revised by P.L.1969, c. 232 (N.J.S.A. 14A:17–1, et seq.).

The pattern of the New Jersey statute is similar to those in other States, and is of

very simple structure: professionals otherwise forbidden by local law to practice in the corporate form are authorized to incorporate, but only subject to explicit restrictions and requirements designed to assure that the achievement of federal tax equity would not open the way to erosion of the protected relationship between the professional and the lay client, or reduce the level of individual professional responsibility, or provide an escape from disciplinary controls. All of these facets have been designed for the protection of the lay client since time immemorial. Every provision of the professional corporation law (as well as N.J. Court Rule 1:21–1A, which supplements the New Jersey statute for lawyers because of the control placed in the Supreme Court of New Jersey by *N.J.Const.1947, Art.* VI, § II, par. 3), firmly displays the purpose retaining full control over the professional relationship despite the authority to practice in the corporate form.

■ The profession of architecture is one of those for which the New Jersey statutes limit the practice to individuals who qualify, take an examination and are licensed (i. e., natural persons), modified only to the extent that the Professional Corporation Act allows such licensed individuals to practice in the corporate form, as New Jersey professional corporations. The act contains no authority for a foreign professional corporation to secure authority to do business in New Jersey. In fact, it expressly forbids any merger or consolidation with any foreign corporation, N.J.S.A. 14A:17–15.

Before the corporate form was authorized for professional entities, it was established law that an architect licensed elsewhere could not recover for professional services to be rendered on a New Jersey project. *Gionti v. Crown, etc., Co.,* 128 N.J.L. 407, 26 A.2d 282 (E&A, 1942). Every knowledgeable person knew this.

But this established law, in practical effect, does not entirely exclude foreign architects from rendering professional services on New Jersey projects. Two kinds of arrangements are used. Under one, the owner contracts with a New Jersey architect and he, in turn, is free to arrange for all manner of supporting services from any architect in the world. The New Jersey architect, of course, remains fully and solely responsible for the professional services rendered to the owner.

Under the other arrangement an unlicensed, out-of-state architect (or firm, or corporation) has in its employ one or more who are licensed in New Jersey, and it is such a person who signs, seals and certifies the plans and specifications. In the absence of a dispute which goes to litigation, many such transactions have been made, executed, paid and satisfied. The arrangement in this case obviously followed the second form. The contract was made with a Maryland corporation not licensed in New Jersey, but the plans and specifications were sealed and certified by an employee who is a New Jersey licensed architect.

■ There is little doubt that the first type of arrangement (contract with a New Jersey architect) is not likely to be open to attack on grounds of illegality, at least so long as there is no issue of subterfuge, pretense or improper circumvention of the law sufficient to warrant penetration of the form to reach the substance. See, for the legal profession, *In re X,* 21 N.J. 281, 121 A.2d 489 (1956).

■ The second type of arrangement, used in this case, is inherently illegal and there are no means to cure the infirmity.

Land is regarded in law as unique, *sui generis,* and always subject to local law. The rendering of professional services for the construction of a permanent building has such a firm nexus to land as to invest it with the same local character. This is because the building becomes part of the land, and therefore, its proper design is inevitably subject to local regulation at all levels. A contract to prepare plans and specifications for a New Jersey building can only be made by an architect licensed by New Jersey, or by a professional corporation formed under its laws. When made by others, the

contract is illegal. The precedents fully bear out this conclusion.

The first pertinent decision to examine is a federal case involving the rendering of architectural services for a New Jersey building by an out-of-state architect not licensed in New Jersey. That case is *Dane v. Brown*, 70 F.2d 164 (C.A.1, 1934). Brown was a Massachusetts architect. He contracted to design a house for Mrs. Dane in New Jersey, and supervise the construction. He did the work but was not paid. He sued in federal court in Massachusetts. Mrs. Dane asserted the contract was illegal.

The trial court entered judgment for Brown, and Mrs. Dane appealed. The Court of Appeals ruled the result correct, and affirmed, on the theory that the handling of the one isolated case was not enough, in law, to constitute the "practice of architecture" in New Jersey, forbidden by the statute here.

Soon thereafter in the same year, the Legislature amended the then statute to add a provision that any single act or transaction "shall constitute" engaging in business or the practice of architecture within the meaning of the act. L.1934, c.117, § 1. This provision is currently in the law as the second paragraph of N.J.S.A. 45:3–10.

The Legislature had New Jersey judicial precedent for this change. A New York decision, *Weingast v. Rialto Pastry Shop, Inc.*, 243 N.Y. 113, 152 N.E. 693 (C.A.1926), had ruled that the New York law on real estate brokers did not apply to a person engaged in negotiating the sale of a business, even though the tenant's leasehold interest in realty was one of the assets included in the sale.

In New Jersey, *Kenney v. Paterson, etc., Co.*, 110 N.J.L. 141, 164 A. 274 (E&A, 1932) dealt with a situation like that of *Weingast.* Kenney had negotiated a sale of Paterson's going business, and sued for his commission. The answer pleaded illegality, in that the sale included some real estate assets and Kenney was not licensed as a real estate broker. Kenney replied that while part of the assets were real estate, and while he was not licensed, he was not in the business of buying and selling real estate; this was the only transaction in which he had participated, relying on the *Weingast* decision.

The New Jersey court ruled for defendant. It pointed out that the New York statute, among other differences, said nothing about a single sale or transaction, while the New Jersey act had been amended, L.1931, c. 286, to provide that any single act, transaction or sale "shall constitute" engaging in business within the meaning of the act. The 1931 amendment altered the prior law, as applied in *Wensley v. Godby*, 101 N.J.L. 325, 128 A. 590 (S.Ct.1925) which had ruled that the real estate brokers' act did not apply to an individual and isolated contract of brokerage. See the analysis in *Saks Theatrical Agency v. Mentine*, 24 N.J. Misc. 332, 48 A.2d 644 (D.Ct.1946).

Next comes *Weinrott v. Burlington, etc.*, 22 N.J.Super. 91, 91 A.2d 660 (Ch.1952). In that case a Pennsylvania corporation contracted to provide services which were those of both a real estate broker and of an engineer. Summary judgment for defendant was entered in his suit for a contractual 2% commission. The judgment was grounded on the illegality of the contract since the corporation held no license for either activity in this State.

*Weinrott* was considered in *Magasiny v. Precision, etc.*, 91 N.J.Super. 546, 221 A.2d 755 (App.1966). In that case, a summary judgment had been entered against plaintiffs on the ground of illegality for failure to have a professional engineer's license. The upper court reversed on the ground that the record on the motion did not show just what the nature of plaintiffs' activity was, and so it could not be decided whether those activities required the holding of a license. The upper court made inquiry through the Attorney General whether plaintiffs' activities called for a license, and the response was that the question could not be answered without full knowledge about those activities. The reversal sent the case back for trial. There is no further report, and the eventual outcome is un-

known. Thus, *Magasiny* stands for no more than that where the facts do not clearly show that a license was required, a summary judgment cannot be entered on the issue of illegality.

Another federal decision, in this circuit, considered both *Weinrott* and *Magasiny*. In *Costello v. Schmidlin*, 404 F.2d 87 (C.A.3, 1968, Maplewood entered into a contract with Schmidlin, as architect, for a municipal swimming pool. Schmidlin entered into a contract with Costello, a professional engineer licensed in New York, Maryland, Illinois and New Mexico, but not New Jersey, for consulting engineering services to be rendered to and paid by Schmidlin. In the face of a defense of illegality, the court ruled for Costello, pointing out that in . *Weinrott*, the unlicensed plaintiff purported to be the principal professional engineer, while Costello was serving as a consulting professional engineer to a New Jersey architect who was the principal contracting with the lay client.

■ The Court of Appeals in *Costello* does evaluate *Magasiny* as a departure from *Weinrott*. This is evident from the fact that *Magasiny* could not depart from *Weinrott* because *Weinrott* was not a point of departure. *Weinrott* applied *Kenney*, a decision of the former Court of Errors and Appeals, the highest court. The Appellate Division is bound to follow that court's decisions and cannot depart from them; only the Supreme Court of New Jersey can do so, and it has not. See, also, *Gionti*, supra, also decided by the highest court, which is in line with *Kenney* and *Weinrott*, but not referred to in *Weinrott*, *Magasiny* or *Costello*. Perhaps the digest system is at fault, but the case is there and not departed from by the highest court of the State.

■ In the present case, unlike *Magasiny*, there is no issue of fact about whether the services called for a license; the contract is expressly for architect's services, using the standard AIA printed form. The statute on architects includes a "single act or transaction", N.J.S.A. 45:3–10, the engineering statute does not. The engineering statute allows a corporation to practice professional engineering so long as the persons in responsible charge of the engineering are licensed in New Jersey,. N.J.S.A. 45:8–27 (par. 4), but the architect statute carries no such permission.

In the present case, unlike *Costello*, plaintiff foreign corporation was the principal professional architect, dealing directly with the lay client, and not a consultant to a New Jersey licensed professional.

The enactment of the Professional Service Corporation Act, N.J.S.A. 14A:17–1, *et seq.*, in no way alters this result. The corporate plaintiff is not incorporated under that law, but under some Maryland law whose force does not extend beyond its borders. In this respect the illegality is multiplied. Not only is the contracting party not authorized to practice in New Jersey, but it purported to practice here in the corporate form without complying with the only statute under which it is allowed.

■ The legislative purpose to protect those with whom professionals deal, and not to allow the professional responsibility to be degraded by allowing use of the corporate form, would be frustrated by any other result.

The Professional Service Corporation Act requires that *all* shareholders of the professional corporation be individually licensed for their profession in this State. N.J.S.A. 14A:17–5, 10 and 12. Thus, if a single shareholder of such a corporation were not licensed here, the corporation could not be formed and could not exist (the only exception is for the estate of a deceased shareholder, N.J.S.A. 14A:17–10 and 13).

The fact that an individual architect licensed by New Jersey sealed and certified the plans and specifications does not alter the result. He is not the contracting party, and he is not the plaintiff, nor could he be. The only contracting party is a Maryland corporation which cannot sue on an illegal contract, whether alleged as express or implied (common counts), or whether for the agreed sum or for damages *quantum meru-*

*it.* Both the express contract and the underlying relationship were illegal under applicable local law.

A further argument is made that the corporate plaintiff cannot prevail here for failure to obtain authority to do business in New Jersey as a foreign corporation before instituting suit, N.J.S.A. 14A:13–11(1). And, see, *Lilly (Eli) & Co. v. Sav-On-Drugs, Inc.,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), reh. den. 366 U.S. 978, 81 S.Ct. 1913, 6 L.Ed.2d 1268, affirming 57 N.J.Super. 291, 154 A.2d 650 (Ch.1959) and 31 N.J. 591, 158 A.2d 528 (1960); also *348 Bloomfield etc. v. Montclair, etc.,* 90 F.Supp. 1020 (D.N.J.1950).

The point need not be decided. The Maryland corporation cannot secure authority to practice architecture in New Jersey, despite the assertion of counsel that it is in process of doing so, because N.J.S.A. 14A:13–3(1) limits such authority to business "which may be done lawfully in this State by a domestic corporation". Domestic business corporations cannot practice architecture in New Jersey; only domestic *professional* corporations may do so, N.J.S.A. 14A:17–1, *et seq.* and that act does not allow a grant of authority to foreign professional corporations. Even if it did, plaintiff would not qualify because its powers under its Maryland charter include both professional and business activities. Under the statute here, the professional activity must be the sole and specific purpose of the corporation, N.J.S.A. 14A:17–3(2).

The motion is accordingly granted. Judgment will be entered against plaintiff. This result also applies to all other claims by all other parties. All these claims arise out of and are directly connected with the illegal contract, and all are equally tainted. Thus, all parties will be left where the court finds them, without remedy.

This result is what the law intends. New Jersey landowners or developers or builders, as well as unlicensed professionals and foreign corporations, are both to take the consequences of entering into an illegal contract, and derivative claims can rise no higher than their source.

There is no genuine issue on any material fact, and the judgment specified is required to be entered as a matter of law.