ACCOUNTEMPS DIVISION OF ROBERT HALF OF PHILADELPHIA, INC., PLAINTIFF-RESPONDENT, v. BIRCH TREE GROUP, LTD., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 5, 1988—Decided March 31, 1988.

Before Judges SHEBELL and ARNOLD M. STEIN.

*James P. Manahan* argued the cause for appellant (*Strauss & Hall*, attorneys; *Gordon C. Strauss*, of counsel and *James P. Manahan*, on the brief and reply letter brief).

*James Curcio* argued the cause for respondent (*Pennington & Thompson*, attorneys; *James Curcio*, on the brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.S.C., (temporarily assigned).

Defendant appeals from a summary judgment awarding a placement fee of $12,000 to plaintiff, a Pennsylvania employment agency not licensed for that activity in New Jersey at the time of these events. We reverse because the collection of permanent placement fees by one not licensed by this State to conduct an employment agency is contrary to public policy.

The essential facts are not in dispute. Plaintiff Accountemps is a division of Robert Half, Inc., a private employment agency licensed in Pennsylvania, with principal offices in Philadelphia. Half specializes in the placement of accounting, financial and data processing personnel. Accountemps is its temporary placement division. Frequently, individual job applicants seeking permanent placement through Half will make themselves available for temporary positions with Accountemps.

On February 28, 1985, David Sengstack, defendant's president, telephoned the Trevose, Pennsylvania, office of Accountemps, seeking a comptroller in its Princeton office for a

three-to-six-month assignment. Susan Afan, plaintiff's office manager, explained the temporary placement procedure, including hourly rates for the temporary employee and the placement fee to be charged. Afan also advised that a permanent placement fee was to be charged if the employee's temporary placement became a permanent position. David Sengstack agreed to these terms, which were confirmed in writing by a letter from Afan dated March 11, 1985. Enclosed with the letter was a permanent placement fee schedule.

On that date, plaintiff sent Robert Patterson to fill the temporary comptroller position. Patterson worked in defendant's office as a temporary from March 11, 1985 until May 3, 1985. At the end of each week, a representative of defendant would complete and sign a card which showed the number of hours worked by Patterson. The time card contained the following paragraph above the employee's signature line:

> In the event we employ this person in any capacity, and/or place him/her on our payroll during the temporary assignment or within one year of its severance, we agree to pay ROBERT HALF OF PHILA. INC. its regular placement fee.

On May 7, 1985, Gregg Sengstack, defendant's treasurer and business manager, telephoned plaintiff to advise that Patterson had been hired in a permanent accounting position at a $40,000 annual salary. On that same day, plaintiff sent defendant an invoice of $12,000 as a permanent placement fee, calculated from the schedule earlier sent by plaintiff to defendant. Defendant has paid all temporary placement fees in full, but refuses to pay this $12,000 permanent placement fee.

Neither Accountemps nor Half was licensed in New Jersey as an employment agency during the period of Patterson's temporary employment with defendant or at the time of his hiring on a permanent basis. *N.J.S.A.* 34:8–26. Since 1979, Accountemps has been authorized to do business in New Jersey as a foreign corporation, pursuant to *N.J.S.A.* 14A:13–1, *et seq.* In November 1985, after this dispute arose, Half became licensed to conduct a private employment agency in New Jersey, and

since that time has opened offices for itself and Accountemps in Cherry Hill.

Accountemps was not required to hold a New Jersey employment agency license in order to provide placement of temporary employees in this State. *N.J.S.A.* 34:8–24 and 34:8–25(6) expressly exclude temporary help service firms from the licensing requirements imposed upon employment agencies.

We conclude that the permanent placement of employees in New Jersey by anyone not licensed by this State as an employment agency is contrary to public policy. Any agreement for placement fees made under such circumstances is unenforceable, and no fee may be recovered by non-licensed persons or companies providing services as an employment agency in this State. Under *N.J.S.A.* 34:8–24

"Employment agency" means and includes the business of procuring or offering to procure help or employment, or the giving of information as to where help or employment may be procured, whether the business is conducted in a building or on the street or elsewhere; or the business of keeping an employment bureau, ... or other agency or office for procuring work or employment for persons, where a fee or privilege is exacted, charged or received directly or indirectly for procuring or assisting or promising to procure employment, work, engagement or a situation of any kind, or for procuring or providing help or promising to provide help for any person, whether such fee is collected from the applicant for employment or the applicant for help, or whether the application for help or employment is made directly or indirectly by either the prospective employer or the prospective employee or by any person acting to secure either help or employment for the prospective employer or the prospective employee....

*N.J.S.A.* 34:8–26 expressly prohibits the conduct or maintenance of an employment agency in New Jersey without the required license:

No person shall either directly or indirectly open conduct or maintain an employment agency or perform any of the functions of an employment agency without first obtaining such license or licenses as is or are required by the provisions of this act.

Our case law has almost consistently held that fees are not collectable by unlicensed persons or entities for licensed activities. Directly in point is *Nitta v. Yamamoto*, 31 *N.J.Super.* 578 (App.Div.1954). There, a contract for the placement of

defendant with hatcheries as a baby chick sexor was held to be unenforceable because plaintiff was not licensed to conduct the business of an employment agency.  Plaintiff sued to enforce a restrictive covenant in the agreement.  We held (31 *N.J.Super.* at 584):

> We agree with the trial court that the statute is regulatory and penal requiring a license in order to pursue the employment agency business and that plaintiff, as an unlicensed agency, cannot maintain this action.

In *Rob't T. Winzinger v. Mgmt. Recruiters*, 668 *F.Supp.* 389, 393 (D.N.J.1987), the United States District Court for New Jersey declared void and unenforceable a contract with a Pennsylvania employment agency not licensed in this State.  The court concluded that New Jersey case law invalidates as against public policy contracts by professionals who are not licensed in accordance with statute.

To the same effect, see *Gionti v. Crown Motor Freight Co.*, 128 *N.J.L.* 407 (E. & A.1942) (licensed engineer and surveyor licensed as architect could not recover for architectural services); *Design–4 v. Masen Mountainside Inn, Inc.*, 148 *N.J.Super.* 290 (App.Div.1977), certif. den. 75 *N.J.* 6 (1977) (suit barred on fee for architectural services by designer who was not licensed architect).

In this case, as in *Design–4*, the trial judge incorrectly relied upon *Magasiny v. Precision Specialties*, 91 *N.J.Super.* 546 (App.Div.1966).  He held the fee arrangement enforceable because the services were rendered in a competent manner and because there were civil remedies available against defendant for conducting business in New Jersey without a license.  *Magasiny* is distinguishable.  There, we reversed the entry of summary judgment because genuine issues of material fact existed as to whether the services rendered by plaintiff did in fact require a professional engineering license.  What the trial judge relied upon in *Magasiny* is the following *dictum* (91 *N.J.Super.* 550):

> ... [E]ven when the activity is literally within the statute, the facts may present a situation so borderline or unfair that the defense of illegality will not

be permitted, or, at least, the defendant will not be allowed to keep what he received without making fair compensation.

As we stated in *Design–4*, 148 *N.J.Super.* at 292, we are not at liberty to depart from the clear holding of *Gionti v. Crown Motor Freight Co.*, *supra.* We also add our disinclination to depart from *Gionti* and similar holdings which we believe express most properly the public policy of this State.

We reverse the entry of summary judgment in favor of plaintiff and remand the matter to the Superior Court, Law Division, for entry of defendant's cross-motion for summary judgment.