233 N.J. Super. 388 (1989)
558 A.2d 1371
MAGLIO & KENDRO, INC., PLAINTIFF-RESPONDENT,
v.
SUPERIOR ENERQUIP CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 25, 1989.
Decided June 2, 1989.
*390 Before Judges PRESSLER, SCALERA and STERN.
Lesser & Kaplin, attorneys for appellant (Alan P. Fox on the brief).
Hoagland, Longo, Oropollo & Moran (Alan I. Dunst, of counsel; Jamie D. Happas on the brief).
The opinion of the court was delivered by STERN, J.A.D.
*391 Defendant appeals from a judgment of the Law Division granting plaintiff's motion for summary judgment and entering judgment for plaintiff in the amount of $12,902.72, plus interest and costs. The Law Division order enforced a judgment previously entered against defendant in the Circuit Court of Waukesha County, Wisconsin. We affirm.
There is no dispute as to the material facts. Defendant is a New Jersey corporation which sells and services boilers and boiler materials. It has two places of business  one located in Edison, New Jersey and the other located in Blue Bell, Pennsylvania. Plaintiff is a Wisconsin corporation which performs "executive search, management consulting, and outplacement services". Its principal place of business is located in Brookfield, Wisconsin.
By a telephone call presumably from New Jersey or Pennsylvania on December 11, 1986, Michael Miller, defendant's president, contacted Richard J. Kendro, vice president of plaintiff, seeking to engage plaintiff's services to search for a new general manager for defendant's Pennsylvania office. An agreement was reached and confirmed in writing from plaintiff to defendant the same day, and pursuant to Kendro's request, Miller forwarded to plaintiff a variety of materials including a description of defendant's boilers and a specification book.
After receiving the materials, plaintiff proceeded to contact and screen "approximately 30-35 potential prospects" for the position, ultimately trimming that list "to 5 viable candidates." Kendro forwarded the five candidates' "presentations" to Miller and confirmed with Miller his "agreement to come to Milwaukee, Wisconsin to personally participate in final interview processes." A number of telephone conversations between Kendro and Miller ensued to arrange the details of Miller's trip. Pursuant to those conversations Kendro made arrangements, including hotel reservations, for Miller to interview the five candidates *392 at plaintiff's Wisconsin offices on March 4, 1987. The arrangements with Miller were also confirmed in writing.
However, on February 23, 1987 Miller telephoned Kendro to advise him that defendant wished to "terminate the search." As a result, plaintiff on that date forwarded a final invoice to defendant for "professional recruitment services" rendered in the amount of $11,752.86. Defendant did not pay that amount to plaintiff, apparently taking issue with the number of hours for which it was billed by plaintiff. Consequently, on August 28, 1987 plaintiff filed a one-count complaint in the Circuit Court of Waukesha County, Wisconsin, seeking judgment against defendant for the invoice amount plus interest and costs. Defendant chose not to defend against the Wisconsin action.[1] Thus, on November 18, 1987 a default judgment was entered against defendant by the Wisconsin court in the aggregate amount of $12,902.72.
Plaintiff subsequently instituted this action in the Law Division, seeking the enforcement of the Wisconsin default judgment. Plaintiff moved for summary judgment in its favor, based upon the Wisconsin judgment, while defendant cross-moved for summary judgment in its favor, asserting that it "never did business" in Wisconsin and that no agent or representative of defendant's had "ever travelled to Wisconsin to do any business on behalf of [defendant] of any kind." Both motions were initially denied. However, plaintiff moved for reconsideration of the denial of its motion, and Judge Breitkopf granted summary judgment in its favor.
*393 Defendant appeals from the Law Division's grant of summary judgment in plaintiff's favor. It contends that, because defendant conducts business "only in the State of New Jersey and Pennsylvania," has no place of business in Wisconsin and has "never advertised or solicited business" there, and since no agents or other representatives of defendant have "ever travelled to Wisconsin" on defendant's behalf, the Wisconsin default judgment "is not entitled to full faith and credit in New Jersey" and "the Wisconsin court's assertion of personal jurisdiction over [defendant] was not supported by sufficient minimum contact between [defendant] and the forum state...." Plaintiff contends, on the other hand, that defendant, "by soliciting [plaintiff] to perform an executive search for a general manager for [defendant's] plant in Pennsylvania, satisfied the necessary jurisdictional minimum contacts for purposes of in personam jurisdiction." (emphasis in original). Judge Breitkopf, in his June 22, 1988 opinion, substantially agreed with plaintiff's position, pointing to "a period of two months where multiple phone conversations and mailing occurred between the two parties" and determining that
[i]n the present case, the defendant made an unsolicited call from its New Jersey office to defendant's office in Wisconsin. An offer was made by plaintiff which defendant relied upon. Follow-up conversations and mailings took place between the parties resulting in defendant actively engaging in performing services for [plaintiff].
We conclude that Judge Breitkopf was correct in granting plaintiff's motion for summary judgment.
A judgment properly entered in accordance with local procedures is entitled to full faith and credit in the courts of any other state, under Art. IV, § 1 of the United States Constitution, provided that the judgment is not rendered in violation of the Due Process Clause of the Fourteenth Amendment. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490, 497 (1980); Hupp. v. Accessory Distributors, Inc., 193 N.J. Super. 701, 708 (App.Div. *394 1984). To be valid, the original judgment must be founded upon adequate jurisdiction over both the subject matter and the parties. World-Wide Volkswagen, 444 U.S. at 291, 100 S.Ct. at 564, 62 L.Ed.2d at 497; James v. Francesco, 61 N.J. 480, 485 (1972); Hupp v. Accessory Distributors, 193 N.J. Super. at 708. Consequently before it is bound by the original judgment, the court in the second state "may inquire into the jurisdictional basis of the foreign court's decree" and, "[i]f that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Association, 455 U.S. 691, 705, 102 S.Ct. 1357, 1366, 71 L.Ed.2d 558, 570-571 (1982).[2]
The Wisconsin courts have noted that its long arm statute[3] "was intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with the requisites of due process of law," Zerbel v. H.L. Federman & Co., 48 Wis.2d 54, 179 N.W.2d 872, 875 (1970), appeal dismissed, 402 U.S. 902, 91 S.Ct. 1379, 28 L.Ed.2d 643 (1971), quoting from Flambeau Plastics Corp. v. King Bee Manufacturing Co., 24 Wis.2d 459, 129 N.W.2d 237, 240 (1964), and in the landmark decision of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the United States Supreme Court ruled that
due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [326 U.S. at 316, 66 S.Ct. at *395 158, 90 L.Ed. at 102, quoting from Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278, 283 (1940)].
The "minimum contacts" test is meant to ensure the fairness and reasonableness of requiring a non-resident to defend a law suit in the forum state. See International Shoe, 326 U.S. at 317, 66 S.Ct. at 158, 90 L.Ed. at 102. The jurisdictional test is not to be applied mechanically, but rather "the quality and nature of the [defendant's] activity in relation to the fair and orderly administration of the laws" must be examined on a case-by-case basis, 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 104, and "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there," World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. "The unilateral activity of those who claim some relationship with a nonresident cannot satisfy the requirement of contact with the forum State"  rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958). See also, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528, 540-541 (1985); World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.
As our Supreme Court has recently stated,
The first step in a minimum-contacts analysis ... is to determine whether the defendant has sufficient contacts with the forum state. The second step is to evaluate those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with `fair play and substantial justice.'" [Charles Gendler & Co. v. Telecom Equipment Corp., 102 N.J. 460, 472 (1986), quoting Burger King, 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543, quoting International Shoe, 326 U.S. at 320, 66 S.Ct. at 160, 90 L.Ed. at 104].
The sufficiency of contacts for jurisdictional purposes depends upon "the relationship among the defendant, the forum, and the litigation...." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. *396 2569, 2579, 53 L.Ed.2d 683, 698 (1977). Where the cause of action arises out of, or is related to, the defendant's contacts with the forum state, "[s]o long as it creates a `substantial connection' with the forum, even a single act can support jurisdiction." Burger King, 471 U.S. at 476 n. 18, 105 S.Ct. at 2184 n. 18, 85 L.Ed.2d at 543 n. 18. See also McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957) (delivery by mail of a life insurance policy to California, acceptance of premium payments mailed from that state and the fact that the insured's residence was located there at the time of his death, constituted sufficient contact for a California court to exercise jurisdiction over a Texas insurer); Wisconsin Electrical Manufacturing Co. v. Pennant Products, Inc., 619 F.2d 676, 677-678 & n. 6 (7th Cir.1980) (while personal visits were involved, only contacts with Wisconsin related to contract involved in the case); Charles Gendler & Co. v. Telecom Equipment Corp., 102 N.J. at 471-472 (1986) (isolated act sufficient to confer in personam jurisdiction where action is based on that contact).
Here, the dispute which formed the basis for plaintiff's Wisconsin action arises out of a promise by defendant to pay for services to be performed in Wisconsin by plaintiff. Moreover, pursuant to defendant's specific request, plaintiff actually performed services for defendant in Wisconsin. Thus, we conclude that there were sufficient contacts for the exercise of in personam jurisdiction over defendant by the courts of Wisconsin with respect to this transaction. Here, it was the nonresident defendant who solicited the resident plaintiff's services. Consequently, plaintiff cannot be said to have "unilaterally" undertaken to perform services for defendant in a foreign state. To the contrary, defendant purposefully availed itself of services which it knew or should have known would be performed by plaintiff on defendant's behalf in Wisconsin. Whether *397 defendant could or could not enforce its contract rights against plaintiff in New Jersey is irrelevant, as is the question of whether plaintiff could enforce its contract against defendant in New Jersey.[4]
As the Seventh Circuit has noted, "[f]or the exercise of personal jurisdiction, the defendant need not have been physically present within the forum state," but rather "need only have acted indirectly within the forum state." Wisconsin Electrical Manufacturing Co. v. Pennant Products Inc., supra, 619 F.2d at 678 n. 6 (7th Cir.1980). Compare also, e.g., Colony Press, Inc. v. Fleeman, 17 Ill. App.3d 14, 308 N.E.2d 78 (1974) and Cook Associates, Inc. v. Colonial Broach & Machine Co., 14 Ill. App.3d 965, 304 N.E.2d 27 (1973) (holding in personam jurisdiction) with Maurice Sternberg, Inc. v. James, 577 F. Supp. 882 (N.D.Ill. 1984) and Afirm, Inc. v. Frazee Paint and Wallcovering Co., 624 F. Supp. 973, 975 n. 4 (N.D.Ill. 1985) (holding no in personam jurisdiction).
Cook Associates, Inc. v. Colonial Broach & Machine Co., supra, is factually similar to this case. In response to a mass *398 mailing sent by the plaintiff, an Illinois employment agency, to a number of prospective employers, the defendant, a Delaware corporation doing business in Michigan, contacted plaintiff and asked to be referred to a specific individual whose personal data appeared in the mailing. 304 N.E.2d at 28-29. After a referral agreement was arranged between the parties, plaintiff forwarded a copy of the individual's resume to defendant. Id. at 29. Defendant interviewed the individual and a year later hired him for a position at defendant's Michigan office, but refused to pay plaintiff's fee. Id. at 29-30. Plaintiff filed suit in Illinois to recover the fee, and over defendant's jurisdictional objections, ultimately obtained a jury verdict on the merits. Id. at 28. Defendant appealed, contending in part that the Illinois court did not have in personam jurisdiction over defendant.
The Appellate Court of Illinois affirmed the judgment of the trial court. Id. at 32. The Appellate Court first noted that, under the relevant Illinois cases, "[p]ersonal jurisdiction over a non-resident does not depend upon the physical presence of the defendant within the state...." Id. at 30. It also noted that even a single business transaction can confer jurisdiction where "the act or transaction itself has a substantial connection with the forum state." Ibid. The court went on to hold that the single business transaction at issue there constituted the "necessary jurisdictional minimum contacts for the purposes of in personam jurisdiction over this defendant," stating in pertinent part that
[a]n employment agency's business is to put a prospective employee in touch with a prospective employer, and the agency's services end once the two principals are made aware of each other's identities so that negotiations can be commenced between them. Although defendant's only contact within this state was a telephone call, that call was all that was necessary for defendant to achieve its purpose. Once defendant informed plaintiff that it was interested in a certain person to fill a position and agreed to pay plaintiff's referral fee if it eventually hired that person, defendant knew, or should have known, that it had entered into a contract with an Illinois agency, that the agency would perform its services from its office in Illinois, that the fee, if due, would be paid to *399 plaintiff in Illinois, and that if the fee were not paid as promised, defendant might be liable to suit in the Illinois courts. [Id. at 31].
It is undisputed that here, as in Cook Associates, the nonresident defendant solicited a transaction with a resident employment agency which defendant knew or should have known would be performed by the agency from its office located within the foreign state. Hence, we conclude that because defendant solicited plaintiff to perform services on defendant's behalf in Wisconsin and both parties took action in furtherance of that agreement, due process does not prevent in personam jurisdiction in Wisconsin in an action arising out of that very agreement. Compare, e.g., Lakeside Bridge & Steel Co. v. Mountain State Construction Co., 597 F.2d 596 (7th Cir.1979), cert. denied, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980) with Madison Consulting Group v. State of South Carolina, 752 F.2d 1193, 1202-1204 (7th Cir.1985) and Alchemie International Inc. v. Metal World, Inc., 523 F. Supp. 1039, 1047-1048 (D.N.J. 1981). See also the cases cited in the opinion of Justice White dissenting from the denial of certiorari in Lakeside, 445 U.S. at 909-910, 100 S.Ct. at 1088-1089, 63 L.Ed.2d at 325.[5]
In analogous situations our own courts have upheld the exercise of in personam jurisdiction over nonresident defendants. See, e.g., Avdel Corporation v. Mecure, 58 N.J. 264, 272 (1971) (although defendant, a New York resident, entered this State to discuss the contract, the Court noted that "[d]efendant ordered rivets from the plaintiff corporation and he knew that his order would have significant effects in New Jersey since it was anticipated that the plaintiff would either manufacture the rivets here or obtain them from some other source."); Wolpert v. North Shore University Hospital, 231 N.J. Super. 378 (App.Div. 1989) (upholding in personam jurisdiction over New York defendants in professional negligence action arising *400 out of reports furnished by defendants for use in New Jersey court proceedings).
Moreover, we do not believe that the exercise of personal jurisdiction over defendant by the courts of Wisconsin offended the concepts of "fair play and substantial justice." See Burger King, 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543, quoting from International Shoe, 326 U.S. at 320, 66 S.Ct. at 160, 90 L.Ed. at 104.
Under due process analysis "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 544.[6] As the United States Supreme Court noted in McGee, supra,
[t]oday many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity. [355 U.S. at 222-223, 78 S.Ct. at 200-201, 2 L.Ed.2d at 226].
Further, as was noted by the World-Wide Volkswagen Court, "[t]he historical developments noted in McGee, of course, have only accelerated in the generation since that case was decided." 444 U.S. at 293, 100 S.Ct. at 565, 62 L.Ed.2d at 498-499. Defendant has presented no "compelling case" that "other considerations" are present which would render Wisconsin's exercise of jurisdiction unreasonable in this case.
The judgment of the Law Division is therefore affirmed.
NOTES
[1] Service of process was effected on defendant on September 13, 1987 at defendant's New Jersey office. Defendant makes no claim that it was not on notice of the pendency of the Wisconsin proceedings, or that it had no opportunity to defend against plaintiff's Wisconsin complaint. Nor does defendant claim that Wisconsin did not have jurisdiction under its own statutes or that judgment was not entered there in accordance with local procedure. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 497 (1980); James v. Francesco, 61 N.J. 480, 485 (1972); Hupp v. Accessory Distributors, Inc., 193 N.J. Super. 701, 708 (App.Div. 1984).
[2] In the absence of litigation on the subject of jurisdiction in Wisconsin, defendant was properly afforded the right to raise that issue in these proceedings in New Jersey. See, e.g., Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186, 191 (1963); James v. Francisco, 61 N.J. at 485; Hupp v. Accessory Distributors Inc., 193 N.J. Super. at 708-709.
[3] See Wis. Stat. §§ 801.05-801.11.
[4] The full faith and credit clause requires that a state enforce a judgment of a sister state although the suit in which the judgment was obtained "could not have been maintained under the laws and policy of the forum to which the judgment is brought," Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 439, 64 S.Ct. 208, 213, 88 L.Ed. 149, 155 (1943); see also Morris v. Jones, 329 U.S. 545, 551, 67 S.Ct. 451, 455, 91 L.Ed. 488, 495-496 (1947); Kenney v. Supreme Lodge of the World, Loyal Order of Moose, 252 U.S. 411, 415, 40 S.Ct. 371, 372, 64 L.Ed. 638, 640 (1920), and the judgment, "if valid where rendered" by a state with subject matter and personal jurisdiction "must be enforced in such other state although repugnant to its own statutes," Roche v. McDonald, 275 U.S. 449, 451-452, 48 S.Ct. 142, 142-143, 72 L.Ed. 365, 368 (1928). Thus, the Wisconsin judgment must be enforced even if the plaintiff employment agency could not obtain an initial judgment in New Jersey if found to be doing business here. See, e.g., Accountemps v. Birch Tree Group, 224 N.J. Super. 163 (App.Div. 1988), certif. granted, 111 N.J. 651 (1988); Robert T. Winzinger, Inc. v. Management Recruiters of Bucks County, Inc., 668 F. Supp. 389 (D.N.J. 1987) (N.J.S.A. 34:8-26 applicable to foreign employment agency doing business in New Jersey; no full faith and credit issue).
[5] Note also the criticism of Lakeside in Madison Consulting, 752 F.2d at 1205-1210 (Swygert, J. concurring) and noted by Judge Lacey in Alchemie International, 523 F. Supp. at 1051.
[6] Given that plaintiff's contractual obligations were performed substantially within Wisconsin, most of the relevant evidence would most likely be found there. Although, unlike the parties in Avdel, supra, and Wolpert, supra, the parties here are not located in adjoining states, we do not deem the distance separating Wisconsin and New Jersey to be so vast as to render it unreasonable for defendant to be forced to defend against an action brought there.