

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-1995

# Choi vs. Kim, etc.

Precedential or Non-Precedential:

Docket 94-5036

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Choi vs. Kim, etc." (1995). *1995 Decisions.* Paper 72.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/72

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5036


IN SIK CHOI,

Appellant,

v.

HYUNG SOO KIM; NANCY SOO LEE;
and GOLDEN PLASTICS

Appellees.



Appeal from the United States District Court
for the District of New Jersey


D.C. Civil Action No. 93-19


Argued July 20, 1994
Opinion Reassigned November 18, 1994

Before:  SCIRICA, LEWIS and SEITZ, Circuit Judges.

(Filed: March 13, 1995)

Charles A. Caudill, Esquire (Argued)
Daniels & Associates
745 West Main Street
Suite 250
Louisville, Kentucky 40202

  Attorney for Appellant

Anthony D. Cipollone, Esquire (Argued)
299 Market Street
P.O. Box 542
Saddle Brook, New Jersey 07662

<u>Attorney for Appellees</u>

**OPINION OF THE COURT**

**SEITZ**, <u>Circuit Judge</u>.

This is an appeal from a final order of the New Jersey district court in a diversity action. The order granted defendant Kim's motion for summary judgment, denied a similar motion by plaintiff, Choi, and dismissed with prejudice the complaint against the other two defendants. Our review is plenary.

## I.  **FACTS**

Choi, a South Korean native, entered into an agreement with Kim, also a South Korean, under which Choi agreed to export cash boxes to Kim. Choi shipped the boxes to Kim for sale in the United States, but Kim failed to pay for them.

In an effort to secure payment, Choi persuaded Kim to give him a promissory note for the amount due. The note, executed in Korea, was accompanied by a "notarial deed" ("deed"). The deed included a "compulsory execution" clause, which provided, as translated, that "[i]f the promissor delay a payment of the promissory note to the creditor, the promissor acknowledged and stated that the promissor would be taken a compulsory execution immediately, he has no objection to make about it." Appendix at 45.

Kim allegedly defaulted on the note, and Choi obtained an Order of Execution in Korea to enforce his rights to compulsory execution under the deed (the alleged Korean "judgment").[1]

---

[1].  The Order of Execution provides, as translated: "NOTARIAL DEED:  I, the undersigned, grant this order of execution to the

Thereafter, Kim allegedly fled to the United States and conveyed all, or a substantial portion, of his property to Nancy Soo Lee ("Lee") and Golden Plastics Corporation, a New Jersey corporation ("Golden Plastics"). See Complaint ¶¶ 4-5.

Choi, by his attorney in fact Song, commenced this action in the United States District Court for the District of New Jersey against Kim, Lee, and Golden Plastics (collectively "defendants") seeking enforcement of his Korean "judgment."

In granting defendant Kim's motion for summary judgment, the district court first expressed skepticism that the deed and order of execution, prepared in Korea, amounted to a judgment under Korean law. See Song v. Kim, et al., No. Civ. A. 93-19, 1993 WL 526340, *6-*7 (D.N.J. Dec. 16, 1993) ("Mem. Op.").[2] The court found that, even if the deed and order of execution constituted a judgment, it would not be recognized under controlling New Jersey law, because it was entered without according Kim minimal due process protections. Id. at *8. Therefore, the district court refused to recognize the Korean "judgment." This appeal followed.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Before addressing the merits, the district court considered whether diversity jurisdiction existed. In doing so,

(..continued)
creditor, In Sik Choi to perform a compulsory execution for the debtor (promissor), Hyung Soo Kim." Appendix at 46.

[2]. The district court dismissed the complaint with prejudice against defendants Lee and Golden Plastics. Mem. Op. at *8.

it was required to decide who was the real party in interest under Rule 17(a) of the Federal Rules of Civil Procedure.[3] See Mem. Op. at 2; see also Bumberger v. Insurance Co. of North America, 952 F.2d 764, 768 (3d Cir. 1991); Field V. Volkswagenwerk AG, 626 F.2d 293, 302 (3d Cir. 1980). In its summary judgment opinion, the court concluded that the caption of the complaint showed that Song was the only named "plaintiff" in the action. Mem. Op. at *8 n.2. It then held that because Choi, not Song, was the real party in interest, it was inclined to dismiss the action under Rule 17(a) of the Federal Rules of Civil Procedure. Id. at *3. The district court, nevertheless, proceeded to address the merits of plaintiff's claim for what it said were reasons of judicial economy. Id. at *4. It concluded that it was free to do so because 1) Rule 17(a) was procedural in nature; 2) the case could have been continued or the complaint refiled with Choi as the named plaintiff; and 3) Choi's inclusion in the action would not destroy diversity jurisdiction. Id.

---

[3]. Rule 17(a) provides in relevant part:

**Rule 17. Parties Plaintiff and Defendant; Capacity**

**(a) Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

FED. R. CIV. P. 17(a).

We need not determine whether the district court was free to proceed to the merits.  We so conclude because of our disagreement with the district court's ruling that Song was the only named plaintiff in the complaint.  We turn to that issue.

On January 18, 1992, Choi executed a Power of Attorney that gave Song the express power to bring suit. See Appendix at 56, ¶ 1.[4]  Thereupon, as Choi's attorney in fact or agent, Song instituted the present action in the district court.  The complaint is captioned in relevant part as follows:

```
In Shik Choi                            )
. . . .                                 )
                                        )
BY AND THROUGH                          )
                                        )
Murphy Inbum Song                       )
. . . .                                 )
                    Plaintiff           )
                                        )
v.                                      )
. . . .
```

Appendix at 63.

This court has found a number of cases where attorneys in fact initiated the suits on behalf of named principals or plaintiffs.  In those cases, the captions were drafted in the same way as the caption in the present complaint. See, e.g., Canton v. Duvergee, 438 F.2d 1218 (3d Cir. 1971); National Ins. Underwriters v. Mark, 704 F. Supp. 1033 (D. Colo. 1989); Lumberman's Underwriting Alliance v. Hills, 413 F. Supp. 1193

---

[4]. Generally, an agent may be expressly authorized to institute legal proceedings on behalf of his principal. See 3 AM. JUR.2D Agency § 97 (1986).

(W.D. Mo. 1976); <u>Wimberly By Bauer v. Furlow</u>, 869 S.W.2d 314 (Mo. Ct. App. 1994).  These cases support the conclusion that Song, as attorney in fact, instituted the present action on behalf of Choi.

It is true that the complaint contained one reference to Song, rather than Choi, as the plaintiff.  <u>See</u> Complaint ¶ 2.  However, the remainder of the complaint clearly identified Choi, not Song, as the named plaintiff.  Indeed, defendants' answer indicates that the defendants knew that Choi was the named plaintiff.

In a footnote in its opinion, the district court questioned the way in which plaintiff's summary judgment motion was styled.  <u>See</u> Mem. Op. at *8 n.2.  The court stated that plaintiff's summary judgment motion was entitled "Plaintiffs' Motion for Summary Judgment."  The court "wondered" whether "inadvertent error has created the impression that Choi is also a named plaintiff, or if Song's counsel is simply unsure as to how this action should be styled." <u>Id.</u>  Despite this statement, the court confined its analysis to the complaint and concluded that Song was the only named plaintiff.

However, a reading of the entire summary judgment motion, including the caption on page one, reasonably indicates that Choi, not Song, was the named plaintiff, and that Song brought the present suit as Choi's agent pursuant to the power of attorney.  Thus, we are inclined to agree with the district court that plaintiff's counsel probably made an typographical error in entitling the motion in the plural.

We conclude that the complaint, reasonably construed, alleges that Choi, not Song, is not only the named plaintiff,[5] but also, as the district court found, the real party in interest.[6]  As such, Choi has standing to bring this action as plaintiff.

We now consider the merits of this timely appeal.

### B. The Status of the Deed and Order of Execution

Choi contends that the district court erred in concluding that the Korean Code of Civil Procedure does not provide a debtor with a procedure to challenge the order of execution in a Korean court.  As a result, Choi argues, the judgment was not obtained in violation of due process, and, therefore, the district court should have recognized it.

As we have noted, the district court expressed skepticism as to whether the deed and order of execution constitute a valid judgment.  It, nevertheless, assumed, arguendo, that the

---

[5].  In his brief to this court, Song, as attorney in fact for Choi, relies on Zaubler v. Picone, 473 N.Y.S.2d 580 (N.Y. App. Div. 2d Dep't 1984) to support his bringing the present suit on behalf of Choi.  In Zaubler, the Second Department held that a partner's attorney in fact, absent any indication to the contrary, was authorized to institute an action in his principal's name. Id. at 582.  This argument, and the reliance on Zaubler, is a further indication that Song did not institute the present action on his own behalf.  The action was brought by Song, as attorney in fact, in the name of his principal Choi.

[6].  In the Notice of Appeal, Song erroneously designated himself as the "plaintiff," appealing the order of the district court's dated December 17, 1993.  On September 23, 1994, this court, on Song's motion, substituted Choi for Song pursuant to Federal Rule of Appellate Procedure 43(b) (because Choi was the real party in interest).

documents constituted a judgment. See Mem. Op. at *7. However, the district court referred to and treated the documents as a valid confession of judgment. See id. We will assume, without deciding, that the deed and order of execution amount to a valid foreign confession of judgment. We will now consider whether New Jersey would recognize this Korean confession of judgment.

The Treaty of Friendship, Commerce and Navigation Between the United States of America and The Republic of Korea, 8 U.S.T. 2217, elevates a Korean judgment to the status of a sister state judgment. See Vagenas v. Continental Gin Co., 988 F.2d 104, 106 (11th Cir.), cert. denied, 114 S. Ct. 389 (1993) (elevating a Greek judgment to the status of sister state judgment under identical provisions in Greek-U.S. treaty); see also Mem. Op. at *5. In this diversity action, New Jersey law governed the district court's determination whether to recognize a foreign country or sister state judgment. Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971), cert. denied, 405 U.S. 1017 (1972).[7]

---

[7]. The Restatement of the Law (Second) Conflict of Laws provides:

> The Supreme Court of the United States has never passed upon the question whether federal or State law governs the recognition of foreign nation judgments. The consensus among the State courts and lower federal courts that have passed upon the question is that, apart from federal question cases, such recognition is governed by State law and that the federal courts will apply the law of the State in which they sit.

RESTATEMENT (SECOND) OF CONFLICTS § 98 cmt c (Supp. 1988) (emphasis added).

In New Jersey, sister state judgments by confession are entitled to full faith and credit.[8] United Pac. Ins. Co. v. Estate of Lamanna, 436 A.2d 965, 968-74 (N.J. Super. Ct. Law Div. 1981); see Somportex Ltd., 453 F.2d at 440.[9] However, New Jersey courts will not enforce these foreign judgments if the rendering state 1) lacked personal jurisdiction over the judgment debtor, 2) lacked subject matter jurisdiction, and 3) failed to provide the judgment debtor adequate notice and an opportunity to be heard. See Estate of Lamanna, 436 A.2d at 968-74; City of Phila. v. Stadler, 395 A.2d 1300, 1303 (Burlington County Ct. 1978), aff'd, 413 A.2d 996 (N.J. Super. Ct. App. Div.), certif. denied, 427 A.2d 563 (N.J. 1980), cert. denied, 450 U.S. 997 (1981); see also Maglio & Kendro, Inc., 558 A.2d at 1373. In this case, neither personal nor subject matter jurisdiction is at issue. The issue is whether Korea provided the debtor, Kim, with notice of the entry of the order of execution and an opportunity to be heard as to its validity.

---

[8]. The Full Faith and Credit Clause of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State . . . ." U.S. CONST. art. IV, § 1. As the New Jersey Supreme Court explained, "That clause directs the courts of each state to give preclusive effect to the judgments of a sister state." Watkins v. Resorts Int'l Hotel & Casino, Inc., 591 A.2d 592, 596 (N.J. 1991).

[9]. As the district court pointed out, in New Jersey valid foreign judgments are also entitled to full faith and credit. See Watkins, 591 A.2d at 596; Maglio & Kendro, Inc. v. Superior Enerquip Corp., 558 A.2d 1371, 1357 n.4 (N.J. Super. Ct. App. Div. 1989).

The district court stated that although Kim waived his right to notice and an opportunity to be heard prior to execution on the deed, it was <u>unable to find</u> any provision in the Korean Code that provided Kim with an opportunity to vacate or challenge the "judgment" once the creditor acted upon the order of execution. <u>See</u> Mem. Op. at *7. All parties disagree with the district court and agree that provisions exist that allow a debtor to challenge a judgment in Korea. <u>See</u> Brief of Appellant at 22, 30, <u>Choi v. Kim, et al.</u> (No. 94-5036); Supplemental Brief of Appellant at 8-9, <u>Choi v. Kim, et al.</u> (No. 94-5036); Supplemental Brief of Appellees at 6 (unnumbered pages), <u>Choi v. Kim, et al.</u> (No. 94-5036) (Defendants' point out that "[a] judgement [sic] debtor is entitled to challenge the judgment in accord with the procedures of the Korean Code of Civil Procedure."). The parties, however, disagree as to whether Korean law provides every judgment debtor with notice of the entry of an order of execution.

Defendants argue that provisions to challenge the deed and order of execution are meaningless because the debtor, Kim, was never notified of the entry of the order of execution. <u>Id.</u> As a result, Kim could not challenge the deed or the order of execution. <u>Id.</u> We will assume, without deciding, that the parties have correctly stated the Korean law (regarding the existence of provisions to challenge the entry of the order of execution) and next determine whether the debtor was provided with adequate notice of the entry of the order of execution, so that he might challenge it.

In the deed the debtor waived his right to notice and the opportunity to be heard <u>prior to the issuance of the order of execution</u>.  This is not in dispute.  As this court has recently pointed out, the United States Supreme Court has held that a judgment debtor's "constitutional right to due process was not violated when judgment was confessed against him . . . without prior notice or hearing, because `due process rights to notice and hearing prior to a civil judgment are subject to waiver.'"  <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1270 (3d Cir. 1994) (quoting <u>D.H. Overmeyer Co., Inc. v. Frick Co.</u>, 405 U.S. 174, 185 (1972)) (internal citations omitted).  This holding has been adopted as the law in New Jersey. <u>See</u> <u>Estate of Lamanna</u>, 436 A.2d at 969-70.  In this case, the <u>waiver</u> was proper and did not offend due process.[10]

What does offend due process, defendants argue, is that the debtor was never notified of the <u>entry</u> of the order of execution and, therefore, was unable to challenge either the order of execution or the execution clause in the deed.  We turn now to that issue.

In <u>Estate of Lamanna</u>, the court evaluated the Pennsylvania confession of judgment procedure, and held that for a confession of judgment to satisfy due process, there must at least be some provision for post-judgment notice and hearing—before the

_____

[10]. The waiver must be made knowingly and voluntarily. <u>D.H. Overmeyer Co., Inc.</u>, 405 U.S. at 185; <u>Jordan</u>, 20 F.3d at 1270; <u>Estate of Lamanna</u>, 436 A.2d at 969-70.  In the present case, there has been no claim that the waiver was coerced or in any way not consented to knowingly or voluntarily.

deprivation of debtor's property takes place. See id. at 969-70; 973-74.[11] The debtor must be given an opportunity to challenge the initial waiver of pre-judgment notice and hearing in the confession clause and to raise any defenses to the debt or the entry of the judgment. See id.; see also D.H. Overmeyer Co., Inc. v. Frick Co., 405 U.S. 174 (1972); Jordan, 20 F.3d at 1272 (discussing a court's review of a waiver in a confessed judgment); Girard Trust Bank v. Martin, 557 F.2d 386 (3d Cir.), cert. denied, 434 U.S. 985 (1977).[12] The Estate of Lamanna court concluded that because the debtor did not receive pre-deprivation notice, it could not raise defenses to the earlier waiver contained in the confessed judgment.

In the present case, defendants claim that the debtor, Kim, never received notice of the entry of the execution clause. Choi claims that because Kim was present when the deed was prepared, and was thereby aware of the compulsory execution clause, and signed it, there was implicit notice of execution. However, in Estate of Lamanna, where the judgment debtors

_____

[11]. The Lamanna's Estate court adopted the rule articulated in Community Thrift Club, Inc. v. Dearborn Acceptance Corp., 487 F. Supp. 877 (N.D. Ill. 1980). In Community Thrift, the court held that notice and an opportunity to challenge the waiver of due process is not sufficient "if the debtor cannot challenge the cognovit clause prior to the deprivation of his property through execution of the confessed judgment." Id. at 883.

[12]. The New Jersey legislature has imposed stricter requirements on the in-state confession of judgment practice. Rule 4:45-2 of the New Jersey Rules Governing Civil Practice (entitled the Procedure to Confess Judgment) requires that a judgment debtor be given notice even before the judgment is entered. See N.J. CIVIL PRACTICE RULES R. 4:45-2.

executed a similar cognovit clause, this implicit "notice" did not satisfy due process.  Thus, there is no evidence that the debtor was notified at the time the order of execution was issued.  In fact, when a debtor is "abroad," as was the case here, the Korean Code allows a creditor to dispense with any notice before compulsory execution. See KOREAN CODE CIV. P., Art. 502 (1990). (In other cases, some form of notification is required. See  id., Art. 501.).  As in Estate of Lamanna, this lack of notice would render any provisions for challenging the "judgment" meaningless.  Under New Jersey law, the Korean procedure does not comport with due process.

### III. CONCLUSION

The order of the district court will be affirmed.

<u>In Sik Choi v. Hyung Soo Kim, et al.</u>
No. 94-5036


LEWIS, <u>Circuit</u> <u>Judge</u>, concurring in the judgment.

I agree with the majority that if one were to reach the issue of whether the laws of South Korea accorded the defendant, Kim, American due process in the circumstances predicating this lawsuit, one would likely reach the conclusion the majority espouses.  However, I do not think we should pursue that course. I believe that before we render an opinion which finds the legal system of a foreign sovereign wanting in that it produces judgments that do not comport with our homegrown notions of justice, prudence dictates that we determine whether what we are criticizing is in fact a "judgment" at all.  Since the plaintiff, Choi, did not establish his prima facie case for domestication of the ostensible South Korean judgment, I would grant summary judgment on that ground and leave the due process concerns for another day.

A.

A plaintiff has a prima facie burden when he or she asserts that he or she is entitled to enforcement in one state of a court judgment of another. Courts in a variety of jurisdictions have recognized this basic burden: a proffered judgment must at least appear to be a valid judgment before an enforcing court will accord it a presumption of enforceability. E.g., Knighton v. Int'l Business Machines Corp., 856 S.W.2d 206, 209 (Tex. App. -- Houston [1 Dist.] 1993) (noting that prima facie case of enforcement is demonstrated upon introduction of "a foreign judgment [that] appears to be a valid, final, and subsisting judgment"); Fischer v. Kipp, 277 P.2d 598 (Kan. 1954) ("duly authenticated copies" of foreign judgments suffice to make out prima facie case for enforcement); see generally Fred R. Surface & Assoc., Inc. v. Worozbyt, 260 S.E.2d 762, 764 (Ga. App. 1979) (judgment creditor's mere assertion of indebtedness, without tender of judgment, does not prove its case). Thus, the Full Faith and Credit Act, 28 U.S.C. § 1738, which describes materials that are entitled to full faith and credit, states in pertinent part:

> The records and judicial proceedings of any court of any . . . State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a

> judge of the court that the said attestation
> is in proper form.

Although we have previously explained that the mode of authenticating court records described in section 1738 is not exclusive (United States v. Mathies, 350 F.2d 963, 966 n.4 (3d Cir. 1965)), the statute clearly reflects the sense that not just any piece of paper can serve as evidence of a judgment satisfying a plaintiff's prima facie burden.

Of course, the issue of whether a putative judgment is in fact a judgment -- that is, "the sentence of the law given by [a] court as the result of proceedings instituted therein for the redress of an injury" (Allegheny County v. Maryland Cas. Co., 132 F.2d 894, 897 (3d Cir. 1943) -- does not arise very often in the garden variety full faith and credit case. Full faith and credit cases usually involve domestication or enforcement in one state of a judgment of the tribunal of another state. It is ordinarily quite easy to tell whether a plaintiff has a "judgment" entitled to a presumption of validity. Such documents tend to share common characteristics among the states of the Union. Furthermore, practitioners generally recognize that they should present a formal, properly authenticated copy of a judgment to the enforcing court.[13]

---

[13]. By contrast, this case is obviously more awkward than the usual full faith and credit case because it is only as a result of a treaty that South Korean judgments are accorded full faith and credit treatment. See Maj. Op. at __ [Typescript at 8]. Thus, because of the treaty, courts in the United States are

Even when a party is seeking enforcement of a confessed judgment, in the ordinary case the putative judgment would have the appearance of a judicial or quasi-judicial instrument. E.g., N.J. R. 4:45-2 (court issues confessed judgment); Pa. Civ. Pro. R. 2951(a) (prothonotary issues confessed judgment upon filing of instrument with confession of judgment clause). Thus, if a litigant arrived at the courthouse door in New Jersey with a document that looked, to all the world, like a notarized private agreement signed in (for instance) Nevada between himself and another party, the enforcing court would reasonably look upon the ostensible "judgment" with suspicion.

That was precisely the case here. Choi presented a document that appeared to be nothing more than a private contract between himself and Kim, notarized by a South Korean notary. Not surprisingly, the district court noted that it was "skeptical that the Deed and Order" at issue "constitute[d] a valid judgment, as if rendered and entered by a Korean court of law." Song v. Kim, et al., No. Cir. A. 93-19, 1993 WL 526340, *6 (D. N.J. Dec. 16, 1993) ("Op."). In fact, the court ruled that "[b]ased on the parties' submissions, the Court finds that no
(..continued)
forced to credit and enforce legal instruments that may be unfamiliar to us -- both in language and in appearance. Absent the treaty, the South Korean "judgment" at issue here would have been scrutinized under the less deferential standards used to determine the validity and enforceability of foreign-country judgments. See generally Restatement (Third) of the Foreign Relations Law of the United States §§ 481, 482 (1987).

Korean court has entered a judgment against Kim, nor has Choi ever brought the matter before a Korean court." Id. at *7. The court should have stopped there: Choi had failed to prove his prima facie case, and his case should have been dismissed with prejudice.[14]

_____

[14]. Choi argues that supplemental materials submitted to us during this appeal establish that he has a valid judgment entitled to full faith and credit. Because I believe that the district court should have ended its inquiry with a finding that Choi had not established his prima facie case in the district court, I would not make any determinations of South Korean law here. However, from the parties' submissions and my independent research, it seems apparent that Choi did not strictly follow South Korean procedures for obtaining a valid confessed judgment. First, Article 522 of the South Korean Civil Code states that "[a]n execution clause of a deed drawn up by a notary public shall be issued by the notary public who is preserving the deed." Art. 522(1). Although the same law and notary office -- Dong Wha Law & Notary Office Inc. -- issued both the notarial deed and the order of execution in this case, different people at different branches of Dong Wha actually performed the notarizing. See App. 45 (notarial deed executed by Choong Won Kim of Dong Wha office at 58-7 Seosomun-dong, Joong-ku Seoul, Korea); id. 46 (execution order signed by Ho Yang Shin of Dong Wha office at 814-6 Yoksam-dong, Kangnam-ku Seoul, Korea). Second, Article 522(1) of the South Korean Civil Code also states that the notary "who is preserving the deed" must issue the execution clause. Similarly, Article 56-2(3) of the South Korean Notary Public Act states with respect to notarial deeds that

> When a notary public prepares a [notarial] deed . . . he shall make a script of the deed in adherence to the original of [sic] bill or check, and an original and a transcript of [sic] deed in adherence to a copy of [sic] bill or check, and deliver then the script to the creditor as specified on the bill or check, and the transcript, to the debtor thereon. The original of the deed shall be preserved by the notary public.

B.

However, although the district court had essentially found that Choi had not made out a prima facie case, the court nevertheless took the matter a step further. The court stated that although the instrument before it had not been proven to be a judgment, that "may be beside the point, as the Court will accept, for purposes of argument, that [sic] Deed and Execution Order do constitute a valid judgment under Korean law." Op. at *7. Having made this assumption, the district court then addressed whether the South Korean legal system had accorded Kim American-style due process. The district court's analysis of the "process" provided by South Korean law is brief enough that I quote it in full:

> While Kim may have waived his right to notice and hearing prior to execution on the Deed, the Court is <u>unable to ascertain</u> whether Korea provides Kim any opportunity to vacate or challenge this `judgment' once Choi acts upon the Execution Order. As the Court understands Song's argument, Choi could seize any of Kim's attachable assets in Korea without ever having a Korean court of law enter a judgment on the Deed and Execution Order. <u>Whether or not this is a correct</u>

(..continued)
(Emphasis added.) There is no indication that <u>any</u> notary office is "preserving" the deed in this case. To the contrary, the notarial deed itself states that "this original of the deed and its copy are made according to the request of the creditor and the debtor and the original is gave [sic] to the creditor, In Sik Choi and the copy is gave [sic] to the debtor, Hyung Soo Kim." App. 45. Therefore, it does not appear from the record before us that there was a copy or original left to be "preserved" at Dong Wha.

> interpretation of Korean law, and *irrespective of the notice, hearing and opportunity to vacate questions*, this kind of judgment without judicial oversight is anathema to our concept of due process.

Id. (emphasis added).  As the italicized portions of the district court opinion demonstrate, the district court did not ascertain what the law of South Korea was, but rather determined that what might be the law of South Korea did not accord Kim American due process.

On appeal, the majority takes the same path.  The majority first assumes that a valid judgment was before the district court (Maj. Op. at __ [Typescript at 8]), then approves the district court's conclusion that what might be the South Korean law implicated here did not afford Kim American due process (Maj. Op. at __ (noting that majority "assume[d], without deciding, that the parties have correctly stated the Korean law"), __-__ (determining that according to what the parties say South Korean law was, "the Korean procedure does not comport with due process") [Typescript at 10, 10-13]).

I believe that the district court erred in assuming that Choi had presented a valid judgment to the district court.  That is because, having made this assumption, the court was forced to decide whether the laws of South Korea pertaining to instruments analogous to American confessions of judgment accord American due process.  There having been a less intrusive manner

in which this case could be resolved (the finding that Choi had failed to make out a prima facie case for enforcement), comity counsels that American courts avoid subjecting the laws of a foreign sovereign to evaluations based on American notions of due process.

I do not mean to suggest that comity prevents us from subjecting the laws of South Korea to a due process evaluation in all cases, or even many cases. Rather, I would invoke comity in the prudential sense that we should avoid disparaging the law of a foreign sovereign which, though certainly not intended, I believe both the district court opinion and the majority opinion have the effect of doing. As we have observed recently, comity, though difficult to define, is in one respect "a version of the golden rule: a `concept of doing to others as you would have them do to you . . . .'" Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 75 (3d Cir. 1994), quoting Lafontant v. Aristide, 844 F. Supp. 128, 132 (S.D. N.Y. 1994). I would not want a tribunal in South Korea, which could resolve on narrow grounds a case involving a putative American judgment, to reach out and judge our own procedures as unjust based on South Korean notions of what process is due a litigant.

For the foregoing reasons, I am unable to join in the majority's analysis although I do concur in the judgment.